[No. 33273.  Department Two.  January 19, 1956.]

ROBERT C. MILLS, *as Administrator, Appellant,* v. PACIFIC COUNTY, *Respondent.*[1]

*Fred M. Bond, Smith Troy, Philip W. Richardson,* and *John Spiller,* for appellant.

*James E. Duree* and *Stark & Hill,* for respondent.

ROSELLINI, J.—This action was commenced to recover damages for the wrongful death of Roy E. Hardesty, who was killed when his automobile went off a bridge owned and maintained by the defendant. The action was tried to the court, which entered a judgment of dismissal at the conclusion of the trial, finding that, if the county had been negligent, there was no evidence that such negligence was the proximate cause of the death, and that the decedent had been guilty of contributory negligence.

The appellant has assigned error to various findings of fact and the refusal to make and enter other requested

[1]Reported in 292 P. (2d) 362.

findings. We will not consider these assignments separately, since they may be adequately treated by considering the basic argument urged in support of them.

Briefly stated, the facts are these: The decedent, an employee of the soil conservation service, lived with his wife and two children on a property called the "Carruthers Ranch," about three miles west of South Bend. The property is reached by a county road, which is the only means of access and which serves the farmhouse and surrounding tideflats. The road is used by the occupants of the ranch, their guests and tradespeople, and occasional hunters, and maintenance men attending a dike constructed nearby. There are two county bridges across sloughs on the Carruthers road. The accident occurred on the more northerly of these two bridges (referred to in the testimony as bridge No. 1), which crosses Stuart's slough at a point approximately one thousand feet south of the Carruthers ranch house.

Bridge No. 1 is an old wooden structure, about one hundred fifty-five feet in length, built upon piling, or bents, with timbers laid lengthwise, overlaid with planking, or decking, placed crosswise. The bridge is about 12½ feet wide. Wheel guards of 6- by 8-inch timbers, running lengthwise of the bridge along both the extreme westerly and easterly ends of the cross planks, were bolted to the cross-decking. Over the years, the bridge, and particularly the decking, deteriorated to the extent that most of the planks became rotten and decayed, some were broken, and large holes appeared on the deck surface. In an effort to keep the bridge in use, some years ago the respondent county made repairs to the understructure and placed over the cross-decking fore-and-aft planking called a "half-sole," 3 inches thick and 12 inches wide, laid lengthwise across the bridge in two strips of three planks each, with a space 24 inches wide between the strips. This left a space of 21 inches between the westerly edge of the half-sole and the wheel guard on the west side of the bridge, and a similar space of 21 inches between the easterly edge of the half-sole

and the wheel guard on the east side of the bridge. The half-sole, at the time of the accident, was in fairly good repair.

During the two and one-half months that he lived on the Carruthers ranch, the decedent drove over the bridge approximately two hundred fifty times. On several occasions, he complained to the county commissioners, or the county engineer, about the condition of the bridge, particularly when a gas-delivery truck had gone through the planking (apparently without damage to the truck) in September, 1952.

At approximately five o'clock on the Sunday morning of November 2, 1952, the decedent drove away from his home, intending to keep an appointment with a friend to go elk hunting. He had retired at nine o'clock the night before, and the evidence was that he was sober, in good health and good spirits. When he failed to appear at the appointed time, his friend went hunting without him. Since his wife did not expect him to return until the following morning, she was not concerned about his absence; but when he failed to report for work the next morning, a search was begun.

During the afternoon of November 3, 1952, searchers noted some scuff marks on bridge No. 1 on the westerly edges of the fore-and-aft planking about forty-five to fifty feet south of the north end of the bridge. They observed that a 35-foot section of the wheel guard on the east side of the bridge was missing; that a section of the wheel guard was floating in the slough; and that an occasional bubble appeared on the surface of the water. On investigation, one car, the Hardestys' automobile, was found in the water some 12 to 15 feet from the easterly edge of the bridge, in the vicinity of the missing wheel guard, the front end pointing easterly. Shortly thereafter, the decedent's body was recovered a short distance from where the car had been raised. The car was in high gear, and none of the tires was flat. The decedent's watch had stopped at 5:12.

There was testimony that the temperature on the morning of November 2nd may have been freezing; that there may have been fog or mist and possibly frost on the bridge. But

none of this was established to a certainty, since there was no witness who was about the vicinity on that morning.

All of the witnesses who were questioned on the point testified that the only safe way to cross the bridge with a vehicle was to keep the wheels on the half-sole. None regarded it as safe to drive on the cross planks. They considered 15 miles per hour the highest safe speed under favorable conditions, and four or five miles per hour safe under unfavorable conditions. The decedent's wife testified that she had driven on the half-sole and had not considered it unsafe. There was no evidence of any other accident having occurred on the bridge, other than the incident involving the gas-delivery truck.

Witnesses who examined the bridge at the time the car and body were recovered testified that there were definite tire marks on the cross-planking (off the half-sole), commencing at the north end of the bridge and continuing to the point where the scuff marks appeared on the westerly edges of the half-sole, which was the point where the car had apparently gone into the slough. The scuff marks were quite pronounced, some wood had splintered, and there was some discoloration, as though tires or rims or both, had cut into the wood on the westerly edge of each half-sole strip. One witness testified that the scuff area gave the appearance of a car having toppled over the bridge. Witnesses also testified that they found skid marks in the gravel road at the approach to the bridge, but the court disregarded these statements in reaching its decision.

Based upon this evidence, the trial court found that the decedent had met his death as a result of his own negligence, and that the plaintiff had failed to establish that the accident was proximately caused by any negligence of the defendant.

As we understand the appellant's theory, he contends that the respondent was negligent in failing to provide wheel guards which would withstand the weight of a car, as well as in certain other respects; that the court was not entitled to consider the evidence of the decedent's negligence because circumstantial evidence may not be used to over-

come the presumption that a decedent was exercising due care for his own safety; and that consequently the only reasonable conclusion to be drawn from the evidence is that the accident was caused by the defective condition of the bridge.

We will assume that the appellant is correct in his first contention, that the respondent was negligent in failing to provide adequate wheel guards. Disregarding for the moment the question of the decedent's negligence, there is no evidence from which we can infer that, had the wheel guard been securely fastened to the bridge, the car would not have gone over the side. Here is a vital missing link in the evidence. We do not know at what speed the vehicle was traveling. We do not know whether it tipped over when the driver attempted to bring it up from the cross-planking onto the half-sole. If it did so, certainly the wheel guard, no matter how substantial, could not have prevented it from toppling over the side of the narrow bridge. There is no evidence that the decedent lost control of his vehicle by reason of some defect in the bridge which he could not have avoided in the exercise of reasonable care for his own safety. In fact, the record is silent as to the cause of the accident unless we consider the evidence of the decedent's negligence.

This evidence is clear and convincing. The witnesses traced the course of the vehicle as it entered the bridge on the cross-planking, which the decedent knew, or in the exercise of reasonable care, should have known, was unsafe, and as it traveled across the bridge to the point where the accident occurred. It is apparent from the evidence that the plunge over the side resulted from the belated attempt to bring the vehicle onto the half-sole, the only portion of the bridge on which it was safe to travel.

Yet the appellant contends that the trial court was not entitled to consider this evidence because it was circumstantial rather than direct, and such evidence may not be used to overcome the presumption of due care. We think this contention results from a misunderstanding of the rules which, before the case of *Hutton v. Martin*, 41 Wn.

(2d) 780, 252 P. (2d) 581 (1953), we applied in cases such as this.

*Richardson v. Pacific Power & Light Co.*, 11 Wn. (2d) 288, 118 P. (2d) 985 (1941), strongly relied upon by the appellant, does not hold that circumstantial evidence may not be considered by the jury in determining whether there was contributory negligence, but merely stands for the proposition that circumstantial evidence of the actions of a decedent will not justify the trial court in holding that, as a matter of law, the decedent was negligent. We held in that case that, in the absence of "direct" testimony by disinterested witnesses, that is, evidence by observers of the decedent's acts, both the presumption and the circumstantial evidence should go to the jury.

To the same effect are *Smith v. Seattle*, 178 Wash. 477, 35 P. (2d) 27 (1934); *Reinhart v. Oregon-Washington R. & Nav. Co.*, 174 Wash. 320, 24 P. (2d) 615 (1933); *Smith v. Seattle*, 172 Wash. 66, 19 P. (2d) 652 (1933); and *Mattingley v. Oregon-Washington R. & Nav. Co.*, 153 Wash. 514, 280 Pac. 46 (1929).

In *Morris v. Chicago, M., St. P. & Pac. R. Co.*, 1 Wn. (2d) 587, 97 P. (2d) 119 (1939), we formulated the rules relative to the presumption of due care. That case was expressly overruled in *Hutton v. Martin, supra,* in so far as it held that, under certain circumstances, the presumption of due care should be submitted to the jury. After analyzing the reasons for the presumption and its function, we concluded that, since the burden of proving contributory negligence is on the defendant, the presumption, the function of which is to impose the burden of going forward with the evidence, is superfluous. We held that, after instructing the jury that the burden of proving contributory negligence is on the defendant and that contributory negligence is never presumed, it was error to further instruct that the decedent was presumed to have been exercising due care.

The effect of this decision was to abolish the presumption of due care on the part of a decedent where the issue is contributory negligence, leaving the defendant with the burden of proving contributory negligence by a pre-

ponderance of the evidence—a burden which we found to be sufficient to protect the rights of the plaintiff. A casual reading of *Smith v. Yamashita*, 42 Wn. (2d) 490, 256 P. (2d) 281 (1953), may give the impression that the presumption was partially revived in that case; however, the holding is in accord with the *Hutton* case, and while we impliedly recognized the continuing existence of the presumption, we treated it as synonymous with the burden of proof.

That proof may be made by circumstantial evidence needs no citation of authority. Here, we have evidence that the decedent, being unquestionably aware of the condition of the bridge, and, as a reasonably prudent man, knowing that it could be traversed safely only upon the half-sole, which was ample in width for this purpose, nevertheless drove his vehicle upon the cross-planking, and, in a belated attempt to bring it onto the portion of the bridge provided for vehicular use, drove it over the edge of the bridge or caused it to topple over. This evidence amply justifies the trial court's finding that the decedent was guilty of contributory negligence, which negligence was a proximate cause of his death.

Since such negligence precludes the appellant's recovery, it is unnecessary to discuss further the question of the negligence of the respondent.

The judgment is affirmed.

HAMLEY, C. J., OTT, HILL, and WEAVER, JJ., concur.