[No. 38507     Department One.     April 20, 1967.]

ALBERT MEHRER et al., *Appellants,* v. WENDELL EASTERLING et al., *Respondents.**

\*Reported in 426 P.2d 843.

*Velikanje, Moore & Countryman,* for appellants.

*Gavin, Robinson, Kendrick, Redman & Mays* and *Robert R. Redman,* for respondents.

LANGENBACH, J. †—Appellants sued to recover for injuries sustained by the husband when the automobile in which he was a passenger collided with a truck-trailer operated by the respondents. From judgment upon a verdict adverse to this claim, appellants have appealed.

The collision occurred within the city limits of Sunnyside, Washington, on January 2, 1964. It occurred about 5 o'clock, at "dusk" and lights were burning on each vehicle. Both vehicles were traveling in the same direction—east. As they approached the city limits of Sunnyside, the automobile slowed down because the appellant husband wanted to renew his driver's license at the state patrol office, located to the left or north side of the street on which they were driving. The driver of the automobile testified that he pulled into the yellow barrier separating the two lanes of traffic and turned on his signal to indicate a left turn. He came to a complete stop to allow an oncoming vehicle to pass. After that vehicle had gone by he looked in his rear-view mirror and saw respondent's truck rapidly approaching from the rear. He was unable to do anything to avoid the collision.

Respondent driver testified to an entirely different version. He was driving a 52-foot-long truck-trailer which contained no cargo. About a mile west of the scene of the accident, the automobile in which appellant was a passen-

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ger passed him. When the automobile reached the Sunny-side city limits it was about 10 car lengths ahead. The automobile slowed down so that the distance between the vehicles decreased to about five car lengths. Both were traveling about 25 miles per hour. Respondent saw the automobile slow down with brake lights flashing; the automobile then went to the right with the right-turn signal on. When he was about four car lengths behind the automobile, respondent started to turn to the left to go around the slowing automobile whose right front wheel was by then off the south edge of the pavement. As respondent passed, about 8 to 9 feet separated the vehicles. When the front of the truck was about 20 feet ahead, or east of the automobile, respondent looked in his rearview mirror. He saw the automobile's left-turn signal come on and the automobile start back on the highway, angling towards the truck-trailer. Seeing this, respondent cut his truck sharply to the left, pulled over and stopped.

The points of impact between the two vehicles were the left rear panel of the automobile in which appellant was a passenger, and the right rear dual tires of the trailer (on which tires was found paint from the automobile).

A city police officer testified concerning the debris, and the position of the truck-trailer and automobile after the collision. The debris was 12 feet behind the automobile when it was stopped, and it was 6-¾ feet from the *south* edge of the street. There were pressure marks caused by the truck tires for a distance of 65 feet to the point at which the truck stopped. They were in a northeasterly direction, from the yellow barrier to the north side of the street.

Captain Corning of the Seattle Police Department testified as an expert concerning the operation and action of automobiles. He stated that if the automobile had moved 12 to 15 feet after the collision it was in motion when hit. The automobile must have been headed towards the truck and then, at the last moment, veered away; that action threw the left rear side of the automobile against the right side of

the trailer. The point of impact, where the dirt fell off the automobile, was the place where the automobile veered away and the contact occurred. The truck was going faster than the automobile. The markings indicated that the rear part of the automobile came into contact first, and the trailer brushed the left side of the automobile.

Upon these controverted facts the case was submitted to the jury on two theories of liability; the negligence of the respondent and the superseding negligence of the host driver. (Contributory negligence and joint venture were not in the case.)

There were 12 assignments of error. They cover the failure of the court to give some instructions and the error of the court in giving others.

The city of Sunnyside chose to adopt a large number of the state's rules of the road by reference. Included in this wholesale adoption was RCW 46.60.040,[1] which provided in part:

> No person driving any vehicle upon any public highway *outside incorporated cities and towns* and overtaking another vehicle proceeding in the same direction shall overtake such vehicle or drive within a distance of less than fifty feet of such overtaken vehicle for such purpose without first signaling his intention to pass by use of horn or other sounding device. (Italics ours.)

It was appellant's theory that respondent was negligent per se in failing to sound his horn when passing the automobile. Of course, it was apparent to appellant that Sunnyside had no legislative jurisdiction over the public highways that lay outside the limits of its incorporation. Therefore, appellant asked the court to read this section to the jury, but to ignore in doing so the words "outside incorporated cities and towns". He offered the ordinance thus edited as his proposed instruction No. 5. The court refused it and instead instructed, in part: "The driver of a motor vehicle shall, when reasonably necessary to insure safe operation,

---

[1] This section was repealed. Laws of 1965, Ex. Ses., ch. 155, § 91. However, for clarity we will refer to it not by citation to session laws, but by its former code designation.

give audible warning with his horn . . . ." These words are found in RCW 46.37.380, also adopted by the city of Sunnyside. We have carefully considered appellant's contentions and conclude that there was no error in the trial court's refusal to accept appellant's proposed instruction No. 5.

The jury was properly instructed that respondent's failure to sound his horn could constitute negligence. They were free to find negligence in that failure, and to declare that negligence, if found, a proximate cause of the accident.

The assignments of error deal primarily with the issue of intervening negligence. Appellant objects both to the fact that the matter was submitted to the jury's consideration and to the form in which it was submitted.

■■ The question is one of legal causation. We have pointed out that

> There is, of course, a distinction between an actual cause, or cause in fact, and a proximate, or legal, cause.
>
> An actual cause, or cause in fact, exists when the act of the defendant is a necessary antecedent of the consequences for which recovery is sought, that is, when the injury would not have resulted "but for" the act in question. But a cause in fact, although it is a *sine qua non* of legal liability, does not of itself support an action for negligence. Considerations of justice and public policy require that a certain degree of proximity exist between the act done or omitted and the harm sustained, before legal liability may be predicated upon the "cause" in question. It is only when this necessary degree of proximity is present that the cause in fact becomes a legal, or proximate, cause.
>
> The most usual definintion of proximate cause of an event is: that cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred. *Eckerson v. Ford's Prairie School Dist. No. 11*, 3 Wn.2d 475, 482, 101 P.2d 345 (1940).

The words "unbroken by any new, independent cause," which appear in our definition of proximate cause, recognize the problem of intervening negligence. In *Qualls v.*

*Golden Arrow Farms, Inc.*, 47 Wn.2d 599, 602, 288 P.2d 1090 (1955), we said:

> " '. . . where the original negligence of a defendant is followed by an independent act of a third person which results in a direct injury to a plaintiff, the negligence of such defendant may, nevertheless, constitute the proximate cause thereof if, in the ordinary and natural course of events, the defendant should have known the intervening act was likely to happen; but if *the intervening act constituting the immediate cause of the injury* was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate such further acts, and the original negligence cannot be said to be the proximate cause of the final injury.' "

On the other hand, "The connection between a negligent act and an injury is not broken by an intervening event which occurs so naturally in the course of events that it might reasonably have been anticipated by the wrongdoer." *Ward v. Arnold,* 52 Wn.2d 581, 584, 328 P.2d 164 (1958). But, "Where such intervening act or force is not reasonably foreseeable, it must be regarded as a superseding cause negating the claim of proximate or legal cause." *Cook v. Seidenverg,* 36 Wn.2d 256, 264, 217 P.2d 799 (1950).

The jury in the instant case was instructed as follows:

> You are further instructed that the law also recognizes that the negligence of one person may be superseded in its effect by the negligence of another, if such other's negligence takes place later, and was not reasonably foreseeable, and was not the product of the original negligence.

As the case went to trial it was obvious that the jury could find that something like the following took place: It was dusk and both vehicles had their lights on. Appellant's driver passed the respondent and was thereafter never more than 10 car lengths ahead of him. Appellant's driver knew that the truck-trailer was behind him. Appellant's driver began to slow down, flashed his brake lights, turned on his right signal light and pulled off to the right of the road until he was 75 per cent off the highway. Respondent

angled left and passed the car in his 52-foot-long truck-trailer and in passing the vehicle driven by appellant's driver he was 8 to 9 feet away. Respondent proceeded past the car and the front of his truck-trailer was 20 feet beyond the car. Appellant's driver, nonetheless, having signalled for a right turn, suddenly changed course and turned left. This was a maneuver with the anticipation of which respondent could not be charged at the time, if ever, when he negligently failed to blow his horn, or keep a proper lookout, or followed too close, or went too fast, or failed to fulfill the duties of a following driver (all of which the jury was instructed it could find).

If the maneuver of appellant's driver, constituting the immediate cause of the injury, was one which it was not incumbent upon respondent to have anticipated, then respondent would owe no duty to appellant to anticipate such further acts and the original negligence of respondent, if found, could not be said to be the proximate cause of the final injury. Whatever risks the possibly negligent acts of respondent created, a jury could find that the risk that a third person would perform so extraordinary a maneuver was not one of them.

■ As the trial court found, the facts would clearly support such a theory. This being true, respondent had a right to an instruction on that theory. "Each party is entitled to have his theory of the case presented to the jury, if there is any evidence to support it." *Woods v. Goodson,* 55 Wn.2d 687, 689, 349 P.2d 731 (1960).

We have carefully considered appellant's arguments which attack the form of the instruction given in the instant case and find them without merit. It is possible that a more detailed instruction could have been given on the subject of intervening negligence. But the instruction given was not erroneous and it certainly did not overemphasize the defense.

Appellant also assigned error to the refusal of the trial court to give appellant's proposed instruction No. 7. He stated that the instruction on concurrent cause which was

given and the one refused were similar except that his instruction included the following statement:

It is no defense for one of such persons that some other person may also have been a cause of the injury, *even if it should appear to you that the negligence of the other person was greater in either its wrongful nature or its effect.* (Italics ours.)

Appellant refers us to no Washington case which would suggest that the above statement is appropriate, let alone that its absence from an instruction on concurrent negligence is reversible error.

Appellant's last contention is that the court erred in failing to submit to the jury as a measure of damages the increased costs of labor in appellant's business, resulting from appellant's injuries. It is not necessary to decide this issue. It became immaterial when the jury returned a verdict on liability in favor of respondent. *Bissell v. Seattle Vancouver Motor Freight, Ltd.,* 25 Wn.2d 68, 85, 168 P.2d 390 (1946).

The judgment based upon that verdict is affirmed.

ROSELLINI, HUNTER, and HALE, JJ., concur.