[No. 969-1.    Division One—Panel 1.    May 1, 1972.]

DONALD H. STUART, *as Administrator, Appellant,* v. CONSOLIDATED FOODS CORPORATION *et al., Respondents.*

*Critchlow, Williams, Ryals & Schuster* and *David E. Williams,* for appellant.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow* and *F. Lee Campbell,* for respondents.

CALLOW, J.—This is a wrongful death action brought by the administrator of the decedent's estate for the benefit of the surviving wife and child claiming that death was due to the negligence of the defendant.

The decedent was working as a crewman for General Telephone Company. His crew was engaged in installing an overhead guy wire from a "lead pole" which supports telephone lines, high over a 2-lane public road to the top of a "stub pole" on the other side of the road. The purpose of the installation was to support the lead pole which was out of plumb.

A cable had been attached to the stub pole 20 feet in the air and then stretched tautly across the road and over the boom of the telephone truck which was parked parallel to the road but on the shoulder opposite the stub pole. The telephone truck has an extension boom which was folded at rest parallel to the ground with the high edge of the boom approximately 11½ feet above the ground. The cable had been stretched from the stub pole across the road and over the boom, and the remaining coil of the cable was then dropped to the ground where it was held in place by the decedent, who stood upon it for the purpose of keeping it taut while the others in his crew prepared to cut the cable to proper length so that it could be attached to the lead pole. The purpose of stringing the cable tautly from the stub pole, across the road and over the boom of the truck was to provide overhead clearance for traffic moving between the two poles while the work was in progress. A member of the telephone crew had been stationed by the foreman near the truck to assist in proper movement of the traffic. The road to the north of the truck was under construction by various contractors who had placed warning signs and flags which concerned that construction. The speed limit was 35 miles per hour in the area.

The defendant's truck approached from the north, saw the flagman, the telephone truck, the poles, and the cable and proceeded between the two poles. The upper corner of the truck snagged the cable on which the decedent was

standing, pulling it with great force around his legs, yanking him into the air and causing fatal injuries.

The jury returned a verdict for the defense and the estate has appealed.

In the absence of the jury at the beginning of the trial, plaintiff's counsel presented a motion in limine to restrict the offering of evidence of the remarriage of the surviving spouse. Plaintiff claims that the admission of this evidence was wrongful, clouded the consideration of the merits of the action, and that evidence of remarriage should not be before a jury in a wrongful death action in any event.

■ Damages in a wrongful death action brought for the benefit of a surviving spouse are fixed at the death of the decedent. *Gray v. Goodson*, 61 Wn.2d 319, 378 P.2d 413 (1963); *Atkeson v. Jackson Estate*, 72 Wash. 233, 130 P. 102 (1913), *aff'd on rehearing*, 74 Wash. 700, 134 P. 175 (1913); C. McCormick, Damages §§ 98, 99 (1935), *et seq. See also* Comment, *Damages in Washington Wrongful Death Actions*, 35 Wash. L. Rev. 441 (1960). Evidence of remarriage or prospective remarriage of the surviving spouse in a wrongful death action should be excluded. The exclusion of such evidence leaves to the understanding and experience of the jury the possibility of remarriage and avoids excursions into collateral investigations which, even if allowed, would leave a jury in no better than a speculative position. A landmark case is *The City of Rome*, 48 F.2d 333 (S.D. N.Y. 1930), which refused to allow evidence of remarriage or its possibility to be offered to mitigate damages. The court stated at page 343:

> If we should enter upon an inquiry as to the relative merits of the new husband as a provider, coupled with his age, employment, condition of health, and other incidental elements concerning him, unavoidably we should embark upon a realm of speculation and be led into a sea of impossible calculations. Moreover, adherence to the rule followed by the commissioner seems essential to consistency with the holding that, upon the death of the first husband, there was "an immediate, final and absolute vesting" in his widow, if the statutory beneficiary, of a cause of action on that account. [Citation omitted.]

The federal courts further consider the rule in *Brady v. Finklea,* 400 F.2d 352 (5th Cir. 1968); *Dixon v. Serodino, Inc.,* 331 F.2d 668 (6th Cir. 1964); and *Johns v. Baltimore & O. R.R.,* 143 F. Supp. 15 (W.D. Pa. 1956).

The opinion in *Reynolds v. Willis,* 209 A.2d 760 (Del. 1965), states at page 762:

> As to whether remarriage serves to mitigate damages, it appears that only two states in this country have answered the question in the affirmative in a suit by a widow. This was in the Michigan case of Sipes v. Mich. C. R. Co., 231 Mich. 404, 204 N.W. 84; and the Wisconsin case of Jensen v. Heritage Mut. Ins. Co., 23 Wis.2d 344, 127 N.W.2d 228. The majority rule is to the contrary. See 87 A.L.R.2d 252. Obviously, inherent in the minority rule is the admissibility into evidence of the probability of remarriage, a question which requires a jury to make conjectures and speculations upon the likelihood of remarriage, as well as a comparison of the manner in which the widow was supported with that in which she might be supported by some unknown future husband acquired at some unknown future date. A more speculative problem is hard to conceive. Yet, to permit an actual remarriage, but not the possibility thereof, to mitigate damages could cause unusual results. The widow who remarries the day after trial would receive an unjust preference over the widow who remarries the day before trial. We think it more reasonable to say that a defendant should not be allowed to profit by an actual or possible remarriage of the widow, just as he may not profit through monies coming to her from insurance policies purchased by her husband upon his own life, or from some other collateral source. We affirm the ruling of the Court below on this point.

*See also Wiesel v. Cicerone,* 261 A.2d 889 (R.I. 1970); *Gallo v. Southern Pac. Ry.,* 43 Cal. App. 2d 339, 110 P.2d 1062 (1941); S. Speiser, Recovery for Wrongful Death § 6:12 (1966), Annot., 87 A.L.R.2d 252 (1963).

In *Bunda v. Hardwick,* 376 Mich. 640, 138 N.W.2d 305 (1965), the Michigan court overruled five prior cases which had allowed evidence of remarriage to mitigate damages and held that such evidence was irrelevant and should be excluded. We feel that such help that the jury might re-

ceive from such evidence is outweighed by the possible resultant harm and involves a collateral source which is not a proper jury concern. *Clason v. Velguth,* 168 Wash. 242, 11 P.2d 249 (1932); *Pancratz v. Turon,* 3 Wn. App. 182, 473 P.2d 409 (1970).

■ Such evidence should not have been admitted in any event, but when evidence is wrongfully admitted which is concerned solely with damages and the verdict reflects no liability, the error is harmless. *Rotundo v. Fischlowitz,* 428 S.W.2d 581 (Mo. 1968); *Robertson v. Southwestern Bell Tel. Co.,* 403 S.W.2d 459 (Tex. Civ. App. 1966); *Palmer v. Waterman S.S. Corp.,* 52 Wn.2d 604, 328 P.2d 169, *cert. denied,* 359 U.S. 985, 3 L. Ed. 2d 933, 79 S. Ct. 940 (1958). Where error is committed but the result could not have been changed by the mistake, the error is harmless and does not justify a new trial. *Kennedy v. Clausing,* 74 Wn.2d 483, 445 P.2d 637 (1968); *Mehrer v. Easterling,* 71 Wn.2d 104, 426 P.2d 843 (1967); *McCartney v. Old Line Life Ins. Co. of America,* 3 Wn. App. 92, 472 P.2d 581 (1970). The error committed could not affect the jury's conclusion about liability; and, therefore, reversal is inappropriate.

The statement of facts sets forth in full the instructions as given by the court. The statement of facts does not include any of plaintiff's counsel's objections to the giving or failure to give instructions. When both parties rested, the jury recessed at the noon hour; and the statement of facts reflects as follows: "(Court reconvened at 1:30 p.m.) (After the court heard exceptions of counsel, the jury returned to the courtroom and the court instructed the jury as follows: )" Counsel have filed a stipulation in the form of a supplemental transcript which states that at the time of the trial "the attorneys for the plaintiff did properly except to the Court's failure to give the plaintiff's Proposed Instruction . . ."

We do not pass on whether a deficient record can be corrected by stipulation. The stipulation presented leaves us in a quandary as to: (a) What information was conveyed

to the trial judge? (b) What is counsel's understanding of the words "properly except?" (c) Did counsel only state that he objected to the failure to give a proposed instruction? (d) Did counsel specifically state an objection which conformed to CR 51(f) but which did not contain a basis for reversal? (e) Does counsel mean to concede the objection contained a proper specific delineation of an appropriate theory which was erroneously excluded? We can only speculate as to the answers to these questions. In order to evaluate a trial court's decision, the basis for the decision must be known. The stipulation presented does not give us that requisite background.

■■ It is essential that the objections taken to the giving or the failure to give instructions be in the record. *Barnes v. Central Wash. Deaconess Hosp., Inc.*, 5 Wn. App. 13, 485 P.2d 85 (1971). This contemplates that the objection and the colloquy between court and counsel concerning the objection will be set forth verbatim in the statement of facts. CR 51(f) requires counsel to state distinctly the matter to which he objects and the grounds of his objection. The objection must be sufficiently explicit to apprise the trial court of the alleged error and review is impossible unless the record reflects the context of the objection. We are unable to tell whether the trial court had an opportunity to understand the reason for the objection and correct any omission. A mere general objection is insufficient. *T. C. Allen Constr. Co. v. Stratford Corp.*, 384 F.2d 653 (4th Cir. 1967); *State v. Scott*, 20 Wn.2d 696, 149 P.2d 152 (1944); *Glick v. Ropes*, 18 Wn.2d 260, 138 P.2d 858 (1943).

■ The purpose of the rule requiring a party to except to the refusal of proposed instructions is to require counsel to do his best to keep trial free from error and to give the trial court an adequate statement of his position. Counsel must make known the action he desires or to which he objects and must state the grounds therefor. *Moore v. Mayfair Tavern, Inc.*, 75 Wn.2d 401, 451 P.2d 669 (1969); *Bellah v. Brown*, 71 Wn.2d 603, 430 P.2d 542 (1967); *Harrison v. A Bar A Ranch, Inc.*, 63 Wn.2d 592, 388 P.2d 531 (1964);

*Lasser v. Grunbaum Bros. Furniture Co.,* 46 Wn.2d 408, 281 P.2d 832 (1955); *Ewer v. Goodyear Tire & Rubber Co.,* 4 Wn. App. 152, 480 P.2d 260 (1971); *Thomas v. General Constr. Co.,* 4 Wn. App. 44, 480 P.2d 241 (1971).

■ There was sufficient circumstantial evidence before the jury to support the defense of contributory negligence and that theory was correctly submitted to the jury. The record contains substantial indication that the strand of wire was negligently allowed to slacken so that it could be caught by the truck body. Negligence and contributory negligence can be proven by circumstantial evidence. *Zukowsky v. Brown,* 79 Wn.2d 586, 488 P.2d 269 (1971); *Archibald v. Gossard,* 65 Wn.2d 486, 397 P.2d 851 (1965); *Mills v. Pacific County,* 48 Wn.2d 211, 292 P.2d 362 (1956).

■ An attempt was made to offer evidence which concerned the condition of the roadway and the construction that was taking place a substantial distance from the site of the accident. Relevancy is a question of logic and experience rather than a problem whose solution can be delineated by a legal formula; and, therefore, its resolution is left to the discretion of the trial court. *Ladley v. St. Paul Fire & Marine Ins. Co.,* 73 Wn.2d 928, 442 P.2d 983 (1968); *Williams v. Queen Fisheries, Inc.,* 2 Wn. App. 691, 469 P.2d 583 (1970).

An examination of the record fails to disclose any abuse of discretion on the part of the trial judge, and we do not see how the evidence sought to be presented would have had any probative value insofar as the matters which were in dispute were concerned.

There is no error in those matters we may review from the record before us.

The judgment is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied June 8, 1972.

Review denied by Supreme Court August 18, 1972.