FILED
COURT OF APPEALS
DIVISION II

2015 MAR 31 AM 8:33

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44951-0-II |
| Respondent, | PART PUBLISHED OPINION |
| v. | |
| WILLIAM H. ELLISON, | |
| Appellant. | |

BJORGEN, A.C.J. — Following a bench trial, the trial court found William H. Ellison guilty of second degree rape and second degree child molestation based on conduct against AE,[1] the minor granddaughter of Ellison's former wife. The court imposed a mandatory life sentence without the possibility of early release, based on a finding that Ellison had previously been convicted of two crimes defined in RCW 9.94A.030 as "most serious" offenses under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570. Ellison appeals, arguing that the trial court denied him the right of allocution and that increasing his punishment based on the judicial finding, not expressly made beyond a reasonable doubt, that Ellison had two prior qualifying convictions violated his rights to due process of law and to equal protection of the laws under the federal constitution.

Ellison also submits a statement of additional grounds for review (SAG) under RAP 10.10, claiming that the trial court violated his right to a speedy trial and that his attorney denied him the right to participate in his own defense, refused to present exculpatory evidence, and

---

[1] Consistently with our court's General Order 2011-1, we refer to minor victims by their initials to protect their privacy.

denied Ellison his right to a jury trial. Ellison further contends in his SAG that the trial judge and the prosecutor committed misconduct. We affirm Ellison's convictions and sentence.

## FACTS

In January 2011, AE accused Ellison of forcing her to have sexual intercourse on one occasion and fondling her breasts on several occasions. AE alleged that the sexual abuse occurred between September 2006 and July 2008, while she lived with her grandmother and legal guardian, Joan Ellison, who was married to William Ellison at the time.[2] Based on AE's accusations, the State filed charges against Ellison in April 2011. The State subsequently notified Ellison that second degree rape qualified as a "most serious offense" under RCW 9.94A.030(37) and that, if he had previously been convicted on separate occasions of two other such offenses, he would be sentenced to a term of total confinement for life without the possibility of release under the POAA. 1 Verbatim Report of Proceedings (VRP) at 8; Clerk's Papers (CP) at 6.

Ellison remained in custody from April 2011 throughout the proceedings. On October 9, 2012, the day trial was set to begin, the prosecutor requested a continuance, informing the court that she had developed a medical problem that required surgery and rendered her unable to proceed as scheduled. Against Ellison's wishes, defense counsel did not object. The trial court found good cause and granted the continuance.

In November 2012, against his attorney's wishes, Ellison filed a pro se motion to dismiss the charges against him. Ellison based the motion on, among other grounds, violation of the

---

[2] The couple divorced in July 2011. For clarity, we refer to Joan Ellison by her first name. We intend no disrespect.

2

time-for-trial rule and his constitutional right to a speedy trial. After reviewing the scheduling orders in the case, the trial court denied the motion.

The parties completed voir dire on January 7, 2013. The next day, following an extensive colloquy, Ellison waived his right to a jury trial. The court began hearing testimony on January 9.

The State presented the testimony of Joan, AE, and David Duralde, M.D., a child abuse expert. Ellison testified on his own behalf, and the defense called no other witnesses.

The trial court found Ellison guilty of one count of second degree rape and one count of child molestation and entered written findings of fact and conclusions of law. The State presented certified copies of the judgment and sentence evidencing Ellison's history of felony convictions, as well as an affidavit from a forensic technician stating that Ellison was the same person identified in those documents.

The court concluded that Ellison was a persistent offender based on the current convictions and its findings that Ellison had two robbery convictions from 1994 and 1997. Ellison did not object to these findings, and the record does not reveal what evidentiary standard the court applied in making them.

After hearing a statement from Joan and argument from counsel, the sentencing court invited Ellison to allocute. Ellison sang a short religious song and spoke about various topics not clearly related to the sentencing proceeding. After making extensive remarks, Ellison began to protest his innocence and accuse his trial attorney of lying to the court. At that point, the court cut Ellison off, explained that the matters he related were irrelevant to the issues at hand, and pronounced the sentence. Ellison asked for permission to finish his remarks, but the court declined.

As required by RCW 9.94A.570, the sentencing court imposed a term of total confinement for life without the possibility of release. Ellison timely appeals.

## ANALYSIS

Because it raises an issue of first impression in Washington, we begin by addressing in the published portion of this opinion Ellison's contention that the sentencing court denied him the right of allocution. In the unpublished portion, we turn to Ellison's constitutional challenges to the sentencing procedure and the claims raised in Ellison's SAG.

### I. THE RIGHT OF ALLOCUTION

Ellison claims that the sentencing court violated his right to meaningful allocution by interrupting his remarks and refusing to allow him to finish. Ellison contends that this error requires resentencing before a different judge.[3] We hold that the sentencing court did not violate Ellison's right of allocution.

The right of allocution is guaranteed by RCW 9.94A.500(1), which states in relevant part that "[t]he court [shall] . . . allow 'arguments from . . . the offender[] . . . as to the sentence to be imposed." (Alterations in original.) Our Supreme Court has specified that "trial courts should scrupulously follow" this statutory mandate. *In re Pers. Restraint of Echeverria*, 141 Wn.2d 323, 336-37, 6 P.3d 573 (2000). Offenders subject to a mandatory life sentence enjoy this right even though the sentencing court has no discretion to exercise. *State v. Snow*, 110 Wn. App. 667, 669-70, 41 P.3d 1233 (2002).

---

[3] The State invites us to decline to consider Ellison's allocution claim, asserting that he failed to timely object. Ellison, however, repeatedly protested the court's termination of his remarks, which sufficiently apprised the trial court of the claimed error. *State v. Moen*, 129 Wn.2d 535, 547, 919 P.2d 69 (1996); *see United States v. Li*, 115 F.3d 125, 132 (2d Cir. 1997) (rejecting an identical waiver argument on the ground that the defendant's protestations adequately apprised the trial court of the issue).

Here, the sentencing court invited Ellison to speak, allowing him to make lengthy remarks before interrupting and pronouncing the sentence. Thus, the issue presented involves the extent to which a court may limit the exercise of the right to allocution.

Our state Supreme Court has specified that allocution

> is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence. It is the defendant's opportunity to plead for mercy and present any information in mitigation of sentence.

*State v. Canfield*, 154 Wn.2d 698, 701, 116 P.3d 391 (2005). It is not, however, intended to advance or dispute facts. *State v. Lord*, 117 Wn.2d 829, 897-98, 822 P.2d 177 (1991); *see State v. Curtis*, 126 Wn. App. 459, 463, 108 P.3d 1233 (2005).

The sentencing court allowed Ellison to speak for some time, cutting him off only when he began using the opportunity to testify about the facts of the case and complain about the conduct of his trial attorney. Under *Canfield*, those were not legitimate purposes for allocution. Because the court let Ellison speak without interruption until it was clear he was using the allocution for improper purposes, we hold that the trial court did not abuse its discretion in cutting short Ellison's allocution.[4]

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

---

[4] This conclusion is consistent with *United States v. Muniz*, 1 F.3d 1018, 1024-25 (10th Cir. 1993), which held that a sentencing court did not violate the right to allocute by cutting the defendant off after he began rearguing the case and complaining that his trial rights had been violated.

II. CONSTITUTIONAL CHALLENGE TO THE PERSISTENT OFFENDER DETERMINATION

Ellison contends that the sentencing court's persistent offender determination violated his constitutional rights for two reasons. First, he argues that the use of prior convictions to impose a harsher sentence than the law would otherwise authorize violated his right to due process of law[5] because the sentencing court did not expressly find that the State had proved beyond a reasonable doubt that the convictions (1) exist and (2) qualify as most serious offenses. Ellison also argues that increasing the penalty for the charged crime on the basis of prior convictions found by a preponderance of the evidence denies defendants equal protection of the laws because in other, similar contexts the courts have made such prior convictions "elements" of a greater crime, which elements the State must prove beyond a reasonable doubt. Br. of Appellant at 8-14.

A.      Due Process

Ellison's due process challenge turns on the United States Supreme Court's holding in *Apprendi v. New Jersey* that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The *Apprendi* Court based the prior-conviction exception to its general rule on *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). *Apprendi*, 530 U.S. at 488-90. Ellison argues that subsequent decisions have undermined the

---

[5] In his first assignment of error, Ellison challenges the sentencing court's persistent offender determination based on the due process provisions of both the Washington and federal constitutions. Ellison, however, presented no analysis under *State v. Gunwall*, 106 Wn.2d 54, 64-69, 720 P.2d 808 (1986), as to whether the state constitutional provision provides greater protection than its federal counterpart. Without that analysis or some other reason why we should interpret the state constitutional provision more broadly, we do not reach the state constitutional issue. *Nelson v. McClatchy Newspapers, Inc.*, 131 Wn.2d 523, 538, 936 P.2d 1123 (1997).

validity of the relevant holding in *Almendarez-Torres*, notably *Alleyne v. United States*, --- U.S. ---, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), *on remand*, *United States v. Alleyne*, 539 Fed. Appx. 269 (4th Cir. Sept. 24, 2013). He argues also that even if the *Almendarez-Torres* exception to the *Apprendi* rule remains viable, it does not apply here because the court based Ellison's sentence not only on the fact of Ellison's prior convictions, but also on the fact that those convictions qualified as most serious offenses.

Ellison's challenge to the *Almendarez-Torres* exception founders on our state Supreme Court's opinions expressly affirming the continuing validity of that exception. *See State v. Witherspoon*, 180 Wn.2d 875, 891-94, 329 P.3d 888 (2014); *State v. McKague*, 172 Wn.2d 802, 803 n.1, 262 P.3d 1225 (2011); *State v. Wheeler*, 145 Wn.2d 116, 122-24, 34 P.3d 799 (2001). *Witherspoon* addressed *Alleyne* and held that it did not require the fact of prior offenses under the POAA to be proved beyond a reasonable doubt. *Witherspoon*, 180 Wn.2d at 891-92. Even more to the point, the *Wheeler* court rejected due process challenges to the POAA's persistent offender procedure indistinguishable from Ellison's challenges. *Wheeler*, 145 Wn.2d at 118-19, 124.

Opinions of our state Supreme Court do not bind us to the extent they conflict with applicable United States Supreme Court precedents. *See, e.g., State v. Anderson*, 112 Wn. App. 828, 839, 51 P.3d 179 (2002). The United States Supreme Court has declined to repudiate the *Almendarez-Torres* exception in light of *Apprendi*. *Alleyne*, 133 S. Ct. at 2160 n.1. Therefore, its precedents do not conflict with the holdings of our state Supreme Court that the exception remains viable. Those holdings therefore control, *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984), and compel us to reject Ellison's argument.

Ellison's attempt to distinguish *Almendarez-Torres* on the ground that his sentence rests on more than simply a finding that the prior convictions exist fails for the same reason: our

Supreme Court expressly rejected his arguments in *Wheeler*, 145 Wn.2d at 118-19, 124, and declined to reconsider its holding in *Witherspoon*, 180 Wn.2d at 891-94. *Accord McKague*, 172 Wn.2d at 803 n.1. Furthermore, because the statute explicitly defines "most serious offense," RCW 9.94A.030(32), whether a given conviction qualifies presents an issue of statutory interpretation: a question of law for the court, not a question of fact. *See State v. Ford*, 99 Wn. App. 682, 691, 995 P.2d 93 (2000). Whether the prior conviction qualifies as a "most serious offense" under RCW 9.94A.030(32) is not a question that could be submitted to the trier of fact and found beyond a reasonable doubt in the first place.

Unless our Supreme Court decides to overrule *Wheeler* and *Witherspoon*, or the United State Supreme Court expressly repudiates the *Almendarez-Torres* exception, those state decisions remain binding precedents. Ellison's due process challenge must yield to their authority.

B.    Equal Protection

Ellison contends that we should apply strict scrutiny to the persistent offender determination in our equal protection analysis, because it deprives defendants of a fundamental liberty interest. Ellison further contends that the POAA's procedure for designating persistent offenders fails even rational basis review. This is so, Ellison argues, because designating prior convictions used to increase the penalty for certain crimes as "sentencing factors," requiring only a finding by preponderance of the evidence, while designating prior convictions used to increase the penalty for other crimes as "elements," requiring proof beyond a reasonable doubt, furthers no legitimate government interest. Br. of Appellant at 9-14. Stated another way, the government interest in punishing recidivists more severely is the same in both contexts, making the distinction artificial and arbitrary.

These arguments fail for the same reasons that Ellison's due process claim fails: our courts have already rejected them. Our Supreme Court held that rational basis review applies to the persistent offender determination procedure, which procedure does not offend the equal protection clause. *State v. Manussier*, 129 Wn.2d 652, 672-74, 921 P.2d 473 (1996); ; *State v. Thorne*, 129 Wn.2d 736, 770-72, 921 P.2d 514 (1996), *abrogated on other grounds by Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

### III. SAG

In his SAG, Ellison claims that (1) his attorney denied him the right to a jury trial, (2) the judge committed misconduct, (3) the trial court violated his right to a speedy trial, (4) his attorney refused to present exculpatory evidence and denied him the right to participate in his own defense, and (5) the prosecutor committed misconduct. Except for his claims that his attorney denied him his right to a jury trial and that the trial judge committed misconduct, which claims the record squarely refutes, all of the claims depend on the truth of Ellison's allegations concerning matters outside the record. On direct appeal, we do not address claims that depend on facts not in the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

A.    The Right to a Jury Trial

Ellison alleges that his attorney "bullied" him into choosing a bench trial. SAG at 6. The record affirmatively refutes this allegation. After voir dire, when Ellison's attorney informed the court that Ellison had decided to opt for a bench trial, the attorney made clear that Ellison did so against the advice of counsel. Although Ellison addressed the court at length about his decision, he never disputed his attorney's statement. The court specifically asked Ellison whether anyone had pressured him, and Ellison denied it:

> The Court:    Has anybody done anything to force you or coerce you or otherwise try to make you give up your right to a jury trial?

[Ellison]:        Just by what I feel. Just by what I've seen. Just by – no coercing. No one's threatened me. I just – I know I won't get a fair trial. I know it. I know I will not get a fair trial. And I'm hoping I can get one from you. But even from your standpoint, you look like you don't even want to do it. So now you might as well just convict me.

3 VRP at 45.

The record establishes that Ellison waived his jury trial rights knowingly, voluntarily, and intelligently and, contrary to the allegation in his SAG, against the advice of counsel. Ellison's claim fails.

B.        Judicial Misconduct

Ellison bases his judicial misconduct claim on the allegation that the trial judge cut short Ellison's impeachment of Joan, then reminded Joan that she was under oath. The record shows that Ellison tried extensively to impeach Joan, using allegedly untruthful answers she had given on forms submitted to the state Department of Social and Health Services, and stopped cross-examining her about it after a sidebar discussion. Although the court made a record of the sidebar, the transcript shows no reminder from the court that Joan was still under oath. Ellison did not object to the trial court's termination of his attempt to impeach Joan.

ER 608(b) specifies that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." The rule, however, gives trial courts discretion whether to allow a party to cross-examine a witness about instances of conduct probative of truthfulness. ER 608(b). The trial court allowed Ellison to cross-examine Joan about her answers on the forms. Thus, to the extent that the record shows that the matters Ellison alleges occurred, nothing suggests that the trial court did anything improper. For these reasons, Ellison's judicial misconduct claim fails.

10

C.    The Right to a Speedy Trial

The record shows that Ellison spent well over a year in custody before commencement of his trial, asserted his right to a speedy trial on at least two occasions, and was clearly not responsible for at least the final delay. Such matters bear on whether a constitutional speedy trial violation has occurred. *State v. Ollivier*, 178 Wn.2d 813, 827, 312 P.3d 1 (2013), *cert. denied*, 135 S. Ct. 72 (2014) (holding that whether a constitutional speedy trial violation has occurred depends on the length of the delay, the reasons for the delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant).

Proper analysis of the claim, however, requires consideration of the reasons for each delay. *Ollivier*, 178 Wn.2d at 831-32 (citing *State v. Iniguez*, 167 Wn.2d 273, 294, 217 P.3d 768 (2009) (citing *Barker v. Wingo*, 407 U.S. 514, 531, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972))). The record does not reveal how many continuances the trial court granted. Except for the continuance to accommodate the deputy prosecutor's medical issue, the record does not disclose the reasons the court granted any continuances or whether Ellison objected in each instance. Because the record is inadequate for review of Ellison's speedy trial challenge, we decline to address the issue. *McFarland*, 127 Wn.2d at 335; *see also Stuart v. Consol. Foods Corp.*, 6 Wn. App. 841, 846, 496 P.2d 527 (1972) ("In order to evaluate a trial court's decision, the basis for the decision must be known.").

D.    Ellison's Remaining SAG Claims

The remainder of the claims raised in Ellison's SAG also depend on matters outside the record. The prosecutorial misconduct claim rests on two allegations: (1) that the prosecutor removed Aaron Wilson, AE's boyfriend, from the State's witness list after discovering that his version of AE's disclosure differed from AE's, and (2) that the prosecutor coached Joan outside

11

the courtroom to change her testimony about Ellison's underwear. Because neither Wilson's description of AE's disclosure nor the witness lists appear in the record, we cannot evaluate the first allegation on its merits. Although the record does show that Joan gave slightly different testimony about the underwear at two different points in the trial, nothing in the record suggests that she gave the second description based on coaching by the prosecutor. Thus, the second allegation also depends on matters outside the record. We therefore decline to address Ellison's prosecutorial misconduct claim.

Ellison bases his misconduct claims against his attorney on allegations that the attorney (1) pressured Ellison into agreeing to continue the trial by threatening to quit, (2) failed to explain what rights Ellison would waive by agreeing to a continuance, (3) refused to have DNA (deoxyribonucleic acid) testing performed on the mattress where the rape allegedly occurred, and (4) failed to procure the testimony of Wilson. All of these claims depend on matters outside the record.

Nothing in the record supports Ellison's claim that his attorney failed to inform him of the consequences of agreeing to a continuance. The only aspect of the record suggesting that Ellison's attorney threatened to quit or otherwise pressured Ellison to agree to any continuance is Ellison's allegation to that effect in a letter he sent to the trial judge pro se. Given the "strong presumption [that] counsel's representation was effective," *McFarland*, 127 Wn.2d at 335, Ellison's bare allegation in the trial court does not suffice to merit review of this claim.

Similarly, nothing in the record supports Ellison's claim that his attorney refused to have AE's mattress tested. Further, neither Wilson's description of AE's disclosure of the abuse allegations, nor any evidence of defense counsel's efforts to secure Wilson's testimony appear in

No. 44951-0-II

the record. We decline to address these claims on this record before us. *McFarland*, 127 Wn.2d at 335.

We affirm the trial court in all respects.

BJORGEN, A.C.J.

We concur:

WORSWICK, J.

MELNICK, J.