(160 App. Div. 150)

### RAPUZZI v. STETSON et al.

(Supreme Court, Appellate Division, Third Department.   January 7, 1914.)

1. ATTORNEY AND CLIENT (§ 109*)—LIABILITY OF ATTORNEY—FAILURE TO MAKE DEFENSE.

As the statute requiring the use of transfer stamps upon the sale of corporate stock did not restrict the affixing of the stamps to the agreement and certificate, attorneys employed to represent one seeking to avoid a purchase of corporate stock are not chargeable with knowledge that no transfer stamps were affixed by an inspection of the agreement and the stock certificate, particularly where their client did not inform them of the fact that no transfer stamps were used.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 221, 222; Dec. Dig. § 109.*]

2. ATTORNEY AND CLIENT (§ 112*)—CONDUCT OF ATTORNEY—NEGLIGENCE.

Where neither the documents relating to the purchase, their client's statements, nor his previous verified pleadings informed defendants, attorneys employed to represent him in a suit where he sought to avoid a purchase of stock, that transfer stamps had not been used, defendants are not guilty of negligence in failing to object to the admission in evidence of the stock certificate alleged to be sold because no such stamps were used.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 224–227; Dec. Dig. § 112.*]

3. ATTORNEY AND CLIENT (§ 112*)—CONDUCT OF CAUSE—NEGLIGENCE.

Where attorneys employed to represent one seeking to avoid a purchase of corporate stock failed to object to the introduction in evidence of the stock certificate because transfer stamps had not been used, they were not negligent, where they did not know of that fact, and as soon as it was brought out moved to strike out the testimony of the plaintiff and dismiss the complaint.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 224–227; Dec. Dig. § 112.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. ATTORNEY AND CLIENT (§ 112*)—DUTY OF ATTORNEY—NEGLIGENCE.

Where attorneys employed to represent one seeking to avoid a contract for the purchase of corporate stock on the ground that the certificate had not been delivered did not, after they discovered on trial that transfer stamps had not been used, seek to withdraw the answer and set up the inconsistent defense that transfer stamps had not been used, they were not guilty of negligence, particularly as their client did not consent to the application for an amendment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 224–227; Dec. Dig. § 112.*]

5. ATTORNEY AND CLIENT (§ 112*)—DUTY OF ATTORNEY—NEGLIGENCE.

An attorney is not held to infallibility, and he is responsible to his client only for those mistakes as a pleader which indicate a lack on his part of the attainments and diligence commonly exercised by legal practitioners, and hence, where there was no precedent, attorneys engaged to represent one who sought to avoid a purchase of corporate stock are not guilty of negligence because they failed to plead that the seller had not used transfer stamps; it appearing that the question whether the plaintiff had to set up a compliance with, or defendant a noncompliance with, the statute, was very close and was decided by a vote of four to three in the Court of Appeals.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 224–227; Dec. Dig. § 112.*]

Appeal from Trial Term, Tompkins County.

Action by Ann E. Rapuzzi against Francis L. Stetson and others. From a judgment for defendants and an order denying her motion for new trial, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Miller & Stephens, of Ithaca, for appellant.

Stetson, Jennings & Russell, of New York City (John B. Stanchfield and Louis S. Levy, both of New York City, of counsel), for respondents.

LYON, J. On the 8th day of September, 1906, Orestus U. Bean and Albert H. Flint entered into an agreement whereby Bean agreed to sell and deliver to Flint on that day 43 shares of stock of the International Smokeless Furnace Company, for the sum of $30,000, payable in installments, and Flint agreed to accept the stock and pay for the same as in said contract provided. At that time Bean indorsed upon a certificate of stock for the 43 shares an assignment thereof to Flint, who was the president of the company, and the cretificate was left in the stock book which was kept at the office of Flint, which was also the office of the company. Later Flint paid Bean $5,000 of the purchase price of the stock; but having made default in further payments, Bean, in April, 1907, brought an action against Flint in the Supreme Court of this state to recover the remaining $25,000 with interest, alleging the making of said agreement, the delivery of the stock to Flint, the acceptance thereof by Flint, the demand for payment of the remaining $25,000, and the failure of Flint to pay the same. Flint thereupon employed a firm of attorneys and interposed an answer, verified by him in July, 1907, in which he denied that the said 43 shares of

stock had been delivered to and accepted by him, and that he was the owner thereof, and that he was indebted to Bean.　In February, 1908, Flint, by the same attorneys, served an amended answer, verified by him, containing the same denials, and, in addition thereto, alleging that he had been induced to enter into the agreement of September 8th by false and fraudulent representations upon the part of Bean and as the result of a conspiracy upon the part of Bean and another.　About May 4, 1908, Flint employed the defendants as his attorneys in said action, and they were duly substituted as such.　On or about May 15, 1908, an order was entered, upon the consent of the attorneys for the respective parties, appointing a referee to hear and determine the issues in the action, and on May 27th the first hearing was had before the referee.　At that time the defendants stated that they wished to amend the amended answer served by their predecessors.　Leave to amend was obtained, and on the 4th day of June, 1908, Flint verified a second amended answer in which he repeated the denials before referred to contained in the two preceding answers, also alleging that Bean had not good title to and was not the legal owner of said 43 shares of stock. This answer also repeated the defenses of inducement by false and fraudulent representations and conspiracy, setting forth the attending circumstances with greater particularity.　The answer also alleged that said agreement was entered into under the mutual mistake that Bean was the owner of the stock, whereas in fact the stock had not been validly issued, and Bean could not give good title thereto; that said agreement of September 8th was unconscionable, Flint in said answer offering to return to Bean said stock delivered or attempted to be delivered by Bean to Flint; and the answer set up as a counterclaim the payment of said $5,000 by Flint to Bean, to which the defendant replied denying liability.

At the hearing had before said referee, said agreement of September 8th, and said certificate of stock were offered in evidence by Bean and received under the objection that the certificate had not the seal of the corporation upon it and did not appear to have been transferred upon the corporation books.　At the hearing had June 30, 1908, Bean, on examination by defendants, testified that no transfer tax stamps were attached to said agreement of September 8th, or to said certificate of stock, or to the transfer upon the stock book, or to any memorandum, whereupon defendants moved to strike out the testimony of Bean and to dismiss the complaint, upon the ground that, under the statute requiring the affixing of stamps, Bean had no cause of action, and that there was no curative provision in the statute.　The referee denied the motion to which defendants took exception.　The referee then allowed Bean, under the objction of defendants, to affix and cancel stamps aggregating 86 cents, the amount of the statutory tax.

Of the many hearings held by said referee, Flint attended only three or four, although he testifies that he was always notified when hearings would take place.

On the 1st day of June, 1909, the referee rendered his decision holding that the stock certificate was duly delivered by Bean to Flint; that the failure of Bean to affix the transfer stamps to the stock certificate,

or to the agreement, or to the delivery of said certificate, was inadvertent, and not with intent to avoid the payment of the transfer tax; that the failure to so affix the stamps was cured by the affixing of the stamps to the stock certificate during the progress of the, trial; that the failure to affix the stamps was not available to the defendant as a legal defense by reason of the failure to plead it in his answer; and that the defendant had waived such infirmity, if any there was, by his failure to object to the reception in evidence of such agreement, or of the certificate on the statutory grounds at the times when said certificate and said agreement were respectively offered in evidence. The referee thereupon directed the entry of judgment against Flint for the balance remaining unpaid of the purchase price of the stock with interest and costs.

From the judgment entered upon the report of the referee, Flint appealed to the Appellate Division; the appeal being conducted by other attorneys substituted at the request of the defendants herein. Upon said appeal the court, holding that the nonpayment of the transfer tax was a defense to be pleaded in order to be available, affirmed the judgment. Bean v. Flint, 138 App. Div. 846, 123 N. Y. Supp. 385. Flint thereupon appealed to the Court of Appeals, the Title Guaranty & Surety Company executing the undertaking upon appeal. That court affirmed the decision of the Appellate Division, 204 N. Y. 153, 97 N. E. 490.

Executions having been issued against the property of Flint upon the judgments entered against him in said action, said surety company was compelled to pay the same, and in May, 1912, obtained by default a judgment against Flint for the sums so paid, aggregating with interest and costs $35,191.95. An execution was issued and returned unsatisfied, and it is conceded that no part of the judgment has been paid.

In February, 1911, Flint assigned all claims, demands, and causes of action against the defendants herein to the plaintiff, who is a stenographer in the office of plaintiff's attorneys, and on the same day plaintiff and Flint executed an agreement whereby practically the one-half of any recovery which was to go to Flint was to be held by plaintiff for his use and to his order; he agreeing to save her harmless from any cost or expense on account of an endeavor to collect the claim.

In March, 1912, this action was brought, the complaint alleging upon. information and belief the employment by Flint of the defendants as his attorneys in the action of Bean v. Flint; the preparation and service by them of the second amended answer; the failure by them to plead the nonaffixing of stock transfer tax stamps; that Flint had paid the judgments entered against him upon the decision by the referee, by the Appellate Division and by the Court of Appeals; and that he had sustained damages thereby, but alleging no special damage, in the sum of $37,771.04, for which she demanded judgment.

[1, 2] The answer herein alleges that, although requested to state to defendants the facts of the case, Flint neglected to disclose to any of the defendants that the transfer tax upon said stock had not been paid; that such fact did not become known to any of the defendants until it was developed by them on their cross-examination of Bean,

whereupon defendants moved to strike out all testimony regarding the contract, and subsequently moved for a nonsuit upon that ground, and at that time consulted Flint regarding amending the answer by setting up such fact, but that Flint did not favor making application for such amendment. The answer further alleges that, so far as known to defendants, no claim that nonpayment of the tax irrevocably outlawed the transaction had been publicly made until during the trial of this action, whereupon, without delay, defendants developed and raised such objection by cross-examining Bean as before stated; that such defense was regarded by the courts as inequitable; that in terms the only effect of the statute was to prohibit the courts from the entertaining actions, or receiving evidence in actions for the enforcement of contracts upon which the tax had not been paid, which contract was nevertheless enforceable in the United States courts as well as in the courts of other states; and that whether the burden was upon the plaintiff or upon the defendant to plead the nonpayment of the tax had never been presented in or decided by the courts, and for the first time was later decided in the action of Bean v. Flint, wherein, in the Court of Appeals, three of the seven judges held the opinion entertained and acted upon by defendants.

Upon the trial of this action the court granted the motion for a nonsuit, to which the plaintiff excepted, as well as to the denial of the motion for a new trial upon the minutes on all the grounds specified in section 999 of the Code of Civil Procedure. In reliance upon the validity of exceptions, this appeal has been taken. There is no allegation in the complaints charging defendants with lack of zeal or ability in conducting the defense of the action, or complaining of the manner in which they discharged their duty to Flint as his attorneys, other than of their alleged neglect to plead the nonpayment of the stock transfer tax, and their failure to object upon that ground to the admission in evidence of the stock certificate. It is therefore to the consideration of these two subjects that our attention must be directed.

As to the failure of defendants' attorneys to make such objection to the admission in evidence of the stock certificate, it appears that at that time they had no knowledge that the transfer tax had not been paid, but, upon the other hand, had been informed by the oaths of Flint to the several answers interposed by him in the action that no delivery of the certificate of stock had been had, and hence that the payment of a transfer tax had not been necessary.

Neither was the inspection of the agreements of September 8th and of the stock certificate not bearing the seal of the company, and still undetached from the stub and bound in the stock book, although both were unstamped, sufficient to charge defendants with liability for failure to surmise that the transfer tax had not been paid.

The statute did not restrict affixing the tax stamps to the agreement and certificate.

"It is difficult to determine whether in such a case as this the statute requires the stamps in payment of the tax to be affixed to the agreement to sell, to a memorandum or bill to be made and delivered at the time of the trans-

fer, or to the stock certificates themselves when actually transferred." Bean v. Flint, 204 N. Y. 153–157, 97 N. E. 490, 491.

It is also to be noticed that Flint does not claim to have stated at any time to defendants that the transfer tax had not been paid, alhough he says he delivered to them the two verified answers and stated to them the facts, upon which he relied for his defense. The testimony of one of the defendants that Flint never stated to them that the transfer tax had not been paid is entirely uncontradicted. Flint testified that his occupation was that of a broker and selling bonds and building railroads, and that he had practically followed no other pursuits, and that his office was in the Mills building, 15 Broad street, New York City.

In view of his business and associations, the doubtless frequent comments in the public press, and the litigation which followed the passage of the statutes, relative to the payment of a transfer tax as to their constitutionality and otherwise, Flint, in 1908, must necessarily have been familiar with the fact that since 1905 the law had required the affixing of stamps upon the transfer of stocks and bonds. Flint testified that at the time he verified the answers he read them over and understood that he denied the delivery of the stock to him and his acceptance of it, and that he did not then know whether there were any stamps on it or not. Flint assumed the duty of stating to defendants the facts constituting his defense, and the defendants had the right to rely upon his having fully and fairly done so as to the matters in which he had taken part. Ignorance of the fact that the transfer tax had not been paid, and hence his failure to state that fact to the defendants and of defendants to raise that objection to the reception of the stock certificate in evidence, was attributable to the ignorance and negligence of Flint rather than to the negligence of his attorneys.

[3] Furthermore, when it appeared upon the examination of Bean that no stamps had been affixed upon making the transfer of the certificate of stock, defendants promptly moved to strike out the testimony of Bean, and to dismiss the complaint upon the ground that under the statute Bean had no cause of action, and that there was no curative provision in the statute. Defendants thereby raised the question as to the admissibility of the certificate in evidence. Whitman v. Foley, 125 N. Y. 651–659, 26 N. E. 725; Bean v. Flint, 204 N. Y. 153, 155, 97 N. E. 490.

[4] As to the claim of liability upon the part of defendants by reason of their failure to plead the nonpayment of the transfer tax, it is not necessary to again recur to the facts just stated as exempting the defendants from responsibility for not having interposed an objection to the admission of the stock certificate in evidence. They apply with equal force to the failure of the defendants to plead the nonpayment of the transfer tax. As to the fact that no application was made for permission to serve a third amended answer which should allege the nonpayment of such tax, it may be observed that the weight of evidence is strongly with the defendants, that Flint did not consent to such an application being made. Regardless, however, of that fact, such an application would have been absolutely futile. No court would have

granted or have allowed to stand an order granting an amendment not involving the merits but setting up the unconscionable defense, utterly inconsistent with the defense, of nondelivery of the stock, that because of the inadvertent neglect to affix stamps to the amount of 86 cents the defendant should be relieved from this obligation to pay upwards of $25,000 for stock which he had purchased and received under an agreement admittedly executed by him, the validity of which he had recognized by paying $5,000 under it. No neglect of duty upon the part of defendants can therefore be predicated upon the fact that no application was made to so amend the answer.

[5] As to the liability of an attorney, he is not held to the rule of infallibility, but is responsible to his client only for those mistakes as a pleader which indicate a lack on his part of the attainments and diligence commonly possessed and exercised by legal practitioners. Courts often differ as to the sufficiency of a pleading without subjecting the judges to the reproach of ignorance or incompetency on account of conflicting views. Kissam v. Bremerman, 44 App. Div. 588, 591, 61 N. Y. Supp. 75.

"It is undoubtedly true that an attorney is only bound to exercise the ordinary, reasonable skill and knowledge of his profession, and is not liable for every error of judgment, or opinion as to the law." Cullen, J., in Byrnes v. Palmer, 18 App. Div. 1, 45 N. Y. Supp. 479, affirmed 160 N. Y. 699, 55 N. E. 1093.

"The conduct of a lawsuit involves questions of judgment and discretion as to which even the most distinguished members of the profession may differ. They often present subtle and doubtful questions of law. If in such cases a lawyer errs on a question not elementary or conclusively settled by authority, that error is one of judgment for which he is not liable." Byrnes v. Palmer, 18 App. Div. 1, 4, 45 N. Y. Supp. 479, 481, affirmed 160 N. Y. 699, 55 N. E. 1093.

The question as to whether pleading the payment of the transfer tax was a condition precedent and hence required to be alleged in the complaint, or was a condition subsequent and hence required to be set up in the answer in order to be available as a defense, was decided by the Court of Appeals by a vote of four to three; Judge Vann writing the dissenting opinion in which Judges Cullen and Collin concurred. Prior to the decisions in Bean v. Flint, no court seems to have passed upon that question.

It is clear, in view of this division of opinion in the Court of Appeals and of the facts before referred to, that the defendants cannot be held to any liability by reason of having believed as the testimony shows, and acted upon the belief, that it was incumbent upon the plaintiff to allege and prove the payment of the transfer tax, nor because of not having applied for permission to amend the answer by pleading the nonpayment of such tax.

A careful examination of the record convinces us that the facts fall far short of establishing liability upon the part of the defendants, judged by even a much more stringent rule than that above stated.

The decision of the trial court dismissing the complaint was therefore correct and should be affirmed, with costs. All concur.