[No. 27326. Department Two. March 20, 1939.]

MILLARD EZEKIEL BOSTOCK et al., Appellants, v. HARRY L. BROWN, as Executor, Respondent.[1]

[1]Reported in 88 P. (2d) 445.

*Cleman & Crimp,* for appellants.

*Harry L. Brown* and *Short & Short,* for respondent.

MILLARD, J.—Ezekiel Bostock died a resident of Kittitas county May 24, 1917. William Adam, executor of the estate of the decedent, acted as such executor until August 31, 1932, when he was discharged, and his final report and petition for distribution were approved by the superior court for Kittitas county.

Within the prescribed statutory period following the death, November 16, 1936, of William Adam, properly prepared claims of plaintiffs, as legatees under the will of Ezekiel Bostock, were filed against the estate of William Adam, deceased, which claims were rejected by the executor of the estate. Promptly thereafter, plaintiffs brought this action against the executor of the estate of William Adam, deceased, for vacation of the order approving the final account and petition for distribution of William Adam, executor of the estate of Ezekiel Bostock, deceased, on the ground that the court's approval was secured through fraud and with-

out due notice to the plaintiffs of the hearing on the final account and petition for distribution. By this action, the plaintiffs seek to charge the estate of William Adam, deceased, with liability for alleged failure of Adam, as executor of the Bostock estate, to properly account and turn over the assets of the estate of Ezekiel Bostock.

The trial court expressed the view that the decree approving the final account of William Adam, executor of the estate of Ezekiel Bostock, deceased, and discharging him as executor, is a bar to recovery upon plaintiffs' claim, and entered judgment of dismissal. Plaintiffs appealed.

The first question presented is whether, where the order approving the final account and the decree of distribution was entered upon general notice posted and published, but special notice to the devisees and legatees was not given because the attorneys designated to receive the special notice withdrew as attorneys for such devisees and legatees prior to the filing of the final account, the order approving the final account will be vacated because of items in the final account alleged to be fraudulent.

The statute (Rem. Rev. Stat., § 1434 [P. C. § 9950], Laws of 1917, chapter 156, p. 657, § 64) provides that, after the issuance of letters testamentary, any person interested in the estate as heir, devisee, or legatee, or attorney for such heir, devisee, or legatee, may serve upon the executor or administrator and file same with the clerk of the court wherein the administration of such estate is pending, a written request for special notice of any or all of the steps or proceedings in the administration of the estate. Such requests shall state the post office address of the heir, devisee, or legatee, or his attorney, and thereafter a brief notice of any of the proceedings in the probate of the estate shall be ad-

dressed to such heir, devisee, or legatee, or his attorney, at his stated post office address, and deposited in the United States post office at least five days before the hearing on such proceedings in the probate of the estate; or personal service of such notice may be made, and such personal service shall be equivalent to such deposit in the post office.

On July 3, 1918, pursuant to Rem. Rev. Stat., § 1434, appellants filed their request for special notice of proceedings in the probate of the estate of Ezekiel Bostock, deceased, which request was signed by the heirs named therein and by their attorneys, Tucker & Hyland. That request, the pertinent portion of which reads as follows, is that the notice be sent "to the undersigned attorneys" of the heirs:

"To William Adam, executor of the last will and testament of Ezekiel Bostock, Deceased, and to H. L. Brown, his attorney:

"You and each of you will please take notice that Robert Bostock and Mrs. Luella Bostock, Arthur Bostock and Mrs. Alice Bostock, Robert Bostock, as the natural guardian of his son, Millard Ezekiel Bostock, and Arthur Bostock, as the natural guardian of his daughter, Ellen M. Bostock, hereby appear by and through their attorneys, Tucker & Hyland, and request that they desire special notes of any and all of the following named matters, steps and proceedings in the administration of said estate, to-wit:   . . .

"The post office address where notice is to be given is to the undersigned attorneys, at 307 Lowman Building, Seattle, King County, Washington   .   .   ."

The executor complied with the foregoing request until the attorneys served on him written notice, dated February 15, 1932, of their withdrawal as attorneys for appellants. No further request was ever made of the executor for special notice of proceedings in the probate of the estate, and no substitution of the attorneys was ever made.

November 4, 1931, at which time the attorneys of appellants had not filed their notice of withdrawal, the executor of the Bostock estate made a complete interim report of the affairs of the estate and served a copy of that report on attorneys Tucker & Hyland. Hearing was had on that report November 20, 1931, at Ellensburg. Appellants' attorneys acknowledged service of that report and the notice of hearing thereon. The interim report contained all the items of which appellants now complain except the sale of certain property to Fred T. Hofmann. The final account of the executor was filed July 6, 1932, and after regular notice was given by posting and publication, the order approving the final account and decree of distribution was entered August 31, 1932.

The fraud alleged in the items was not extrinsic to the hearing upon the final account, therefore any fraud in the items in that final account is no ground at this time on which to base judgment vacating the order approving the final account in 1932. The fraud alleged would inhere in the order approving the final account. *Robertson v. Freebury,* 87 Wash. 558, 152 Pac. 5, L. R. A. 1916B, 883.

The order in probate upon the statutory published notice approving the executor's final account and the decree of distribution is final and *res adjudicata* of all matters covered by that order and all questions that should have been raised at the hearing upon the final account and petition for distribution. *In re Doane's Estate,* 64 Wash. 303, 116 Pac. 847.

The withdrawal of the attorneys designated by the appellants to receive the special notice of proceedings in the probate of the estate of Ezekiel Bostock, deceased, dispensed with the necessity for such special notice. The regular notice by posting and publication was sufficient to confer jurisdiction for entry of the

final order and decree of distribution. The request for special notice was limited to appellants' attorneys; and when they withdrew, it was the duty of the appellants, if they desired special notice under Rem. Rev. Stat., § 1434, to serve a request upon the executor designating those to whom notice should thereafter be given and the address of such designates. The appellants knew that their attorneys had withdrawn long prior to the time the final account was filed, and they had ample opportunity to substitute counsel or to make request for special notice to them. They consulted other attorneys, but those attorneys never requested that either they or the appellants receive special notice of proceedings in the probate of the estate.

The argument that the withdrawal of the attorneys was not effective without the consent or order of court is not sound. As between attorneys and clients, leave of the court is not required; although, as to the adverse party, the attorney may be required to obtain leave of court in order to withdraw from a case after he has entered an appearance of record. 5 Am. Jur. 282, 283. The rule that an attorney should give his client reasonable notice before withdrawing from the case so as to afford to his client an opportunity to procure other counsel was not breached by appellants' attorneys. Appellants knew of the withdrawal of their attorneys long prior to the entry of the final order and decree of distribution of which they now complain; in fact, they consulted other counsel respecting the case.

Appellants complain that transfer of property purportedly purchased by Fred T. Hofmann from the estate and reported to have been later conveyed to another was fraudulent; that the property was not turned back to the executor, but was conveyed to the

son of the executor, and there is no accounting for this transaction in the administration of the estate.

It fairly appears that Hofmann bought the property as a speculation for a group of individuals interested in the possibility of coal in that land. The enterprise was not a success. He stated he conveyed the property to William Adam; the deed, however, shows the property was conveyed to James H. Adam, the son of William Adam. The evidence does not bear out the contention of appellants that fraud was committed in that the property was turned back to the estate and an accounting should have been made of that item in the final account. The purchase price of $1,291 is shown in the final account, and there is no showing that the purchase price was refunded or that the property was returned to the estate. There is no showing that the estate was prejudiced. This property was sold at public auction, and the price obtained therefor was in excess of ninety-five per cent of its appraised value.

Appellants next insist that property of the estate was mortgaged and money borrowed without authorization of the court, and then money was again borrowed to pay off such void mortgage.

The interim report of November 4, 1931, in the estate of Ezekiel Bostock, deceased, discloses that, at the time of the death of the decedent, a certain bank held a mortgage on some of the real property of the estate for approximately $735. The bank demanded payment of that indebtedness, which was long overdue. Without application to the court, the executor borrowed seven hundred dollars and gave another mortgage to secure it, and used this loan to pay the earlier mortgage. When this second mortgage came due, the executor, acting under order of court, sold some of the real property of the estate for seven hundred dollars and paid this later mortgage. Then, to clear up the balance of this and

other indebtedness, the executor borrowed, without authorization of the court, two hundred dollars and gave a mortgage to secure payment of that loan on some of the real property of the estate.

The entire history of the mortgage transactions which constituted a refunding of a prior mortgage debt created by Bostock in his lifetime appears in the interim report of November 4, 1931, a copy of which was sent to appellants' attorneys. While the mortgages were not originally authorized by the court, the mortgages were ratified by its order approving the interim report. *Harden v. State Bank of Goldendale*, 118 Wash. 234, 203 Pac. 16.

While the mortgages were unauthorized, the loans thereon were used to pay debts of the estate, and those mortgages were later ratified by the order of the court approving the interim report.

There has been no injury to the estate or to appellants; and while some of the things to which attention has been directed were not entirely regular, no fraud has been proved.

The judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and SIMPSON, JJ., concur.