[No. 2450-1. Division One. August 4, 1975.]

THEODORE HANSEN, ET AL, *Appellants*, v. ROLAND C. WIGHTMAN, ET AL, *Respondents*.

*Jennings P. Felix, Inc., P.S., Jennings P. Felix,* and *Nicholas F. Corning,* for appellants.

*McMullen, Brooke, Knapp & Grenier* and *E. H. Knapp, Jr.,* for respondents.

CALLOW, J.—The plaintiffs Theodore and Margaret Hansen, parents of Joyce Hansen, brought this action claiming legal malpractice against the members of the Spokane law firm of Cullen, Campbell and Wightman. The plaintiffs appeal a jury verdict in favor of the defendants.

Joyce Hansen, a young amateur swimmer, was participating in a swimming meet in Spokane, Washington, on May 13, 1967. While preparing for an upcoming race, she was knocked down by other child competitors. Her head struck a metal bar embedded in concrete and she was injured.

The plaintiffs contacted a Seattle lawyer who filed a claim against the City of Spokane on June 12, 1967. The plaintiffs later were referred by a friend to Roland C. Wightman, a partner in the Spokane law firm. A retainer agreement signed by the plaintiff father was entered into with the defendants in September 1967, and $50 was paid to cover filing and service fees at the request of Mr. Wightman. The agreement retained Mr. Wightman to represent the daughter in connection with the injuries she had sustained. The defendants did not file a complaint on behalf of the injured child and did not file a separate claim on behalf of the parents against the City of Spokane.

The plaintiffs claim that the child suffered severe injuries. They testified that they repeatedly requested information as to the progress and status of the litigation and that the law firm failed to reply until it was contacted by another Seattle lawyer on or about September 23, 1970. The defendants' position is that they investigated the accident and concluded that the liability of the City for the child's injury was doubtful and the child's injuries were minor. The defendants testified that the plaintiffs did not respond to their inquiries regarding the child's medical condition, and that there was no claim that the injury to the child caused epilepsy until after the file had been returned to the plaintiffs. The lawyers decided that a lawsuit was not justified. It is further their claim that they were retained to represent the child only, and that the period for filing a claim on behalf of the parents for any cause of action they might have against the City had expired when the defendant lawyers were contacted.

The 17 assignments of error involve primarily the admission or rejection of evidence during the course of the trial

and the instructions given or refused which dealt mainly with the attorney-client relationship. Discussion of the issues follows.

1. *Was testimony that the retainer agreement created an attorney-client relationship between the attorney and the parents, in addition to a relationship regarding the child's claims, improperly excluded on the basis of the parol evidence rule?*

■ The plaintiff-clients claim that the trial court excluded parol evidence which would have shown that the defendant-lawyers had been contacted by the parents to represent themselves, as well as their child. The retainer agreement entered into between the parties was prepared by the Seattle lawyer as an accommodation to the plaintiffs. It was in the form of a letter dated September 13, 1967, signed by the plaintiff father and mailed to the defendant Wightman, who signed it on September 20, 1967. The document is plain on its face, and is clear and unambiguous. Parol evidence could not have been admitted to vary its terms. *Washington Fish & Oyster Co. v. G.P. Halferty & Co.*, 44 Wn.2d 646, 269 P.2d 806 (1954); *Schinnell v. Doyle*, 6 Wn. App. 830, 496 P.2d 566 (1972).

■ The retainer agreement which was offered by the plaintiffs and accepted by the defendants clearly pertains only to representation of the father in his capacity as guardian for the child. The agreement itself does not indicate that there was any additional arrangement entered into between the parties, and the plaintiffs did not present evidence of any additional items that were not incorporated into the writing. Absent such proof or an offer thereof, the doctrine of partial integration cannot be asserted as a basis for error. *University Properties, Inc. v. Moss*, 63 Wn.2d 619, 388 P.2d 543 (1964); *Barber v. Rochester*, 52 Wn.2d 691, 328 P.2d 711 (1958).

The defendants further state that the testimony actually presented at the trial did, in fact, cover this aspect of the relationship between the plaintiffs and the defendants. The record discloses that the contention of the defendants is

correct. Defendant Wightman was questioned fully on direct and cross-examination as to whether the defendants were to have any responsibility for any direct claims the parents might have against the City. Our review of the record reveals that the plaintiffs did not attempt to explore this area through other witnesses. We have not found outstanding offers of proof on the subject which were excluded wrongfully by the trial court. Evidence is in the record on the subject, however, and the plaintiffs have not been prejudiced. *See Garratt v. Dailey*, 46 Wn.2d 197, 279 P.2d 1091 (1955); *Akers v. Sinclair*, 37 Wn.2d 693, 226 P.2d 225 (1950).

The agreement is clear on its face, there was no showing or offer of proof of any agreement regarding a direct claim of the parents, and testimony covering the subject was presented in any event. We find no error.

2. *Should certain photographs have been admitted?*

The plaintiffs assert that the exclusion of certain photographs of the scene of the accident taken at a subsequent swim meet was improper. We cannot say that similar circumstances existed at the time the photographs were taken. The admission or rejection of photographs lies in the sound discretion of the trial court. *Rikstad v. Holmberg*, 76 Wn.2d 265, 270, 456 P.2d 355 (1969); *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d 833, 431 P.2d 212 (1967). Here the trial court ruled that the probable misleading or prejudicial effect of the photographs would outweigh their probative value. This was not an abuse of his discretion.

3. *Did the trial court prejudicially comment on the evidence?*

The Seattle attorney who drew the claim against the City and the retainer letter for the plaintiffs was testifying on cross-examination that there was no co-counsel relationship between himself and the defendant. He answered:

A. . . . But it would seem to me that, unless the individual is performing services and doing something productive with respect to the particular case, it would be unethical and in violations [*sic*] of the canons to accept, that is, a "kick-back," if you will.

Q. My question—

THE COURT: There was no kick-back, Mr. Jones.

THE WITNESS: Well, I mean, if I perform services.

THE COURT: I know. Usual practice is, if I'm over in Yakima, there's a practicing attorney in Yakima, and you know me, and your client lives in Yakima, and they contact you initially, you refer a case to me, the usual standard is that, what we call a referral fee, is that I receive two-thirds and you receive one-third. Isn't that your practice over a number of years?

THE WITNESS: I've never done that.

At the first opportunity the plaintiffs moved for a mistrial in the absence of the jury and challenged the statement made by the court.

The court denied the motion for mistrial, returned the jury to the jury box, and stated:

Before you call your witness, I want to talk to the jury. While Mr. Jones was on the witness stand I made a remark about referral fees; forwarding attorney gets a certain percentage, and the person who receives the case gets a certain percentage.

I want you not to take that as a comment on the evidence on my part. It's just what my practice, thirty-four years as a practicing attorney, and practices of thousands of attorneys that I know; has nothing to do with this case whatsoever.

Hope you understand that. It was not a comment; was not an intentional comment by me. I was explaining my experience; my background.

Do you all understand that?

JURY RESPONSE: Yes.

THE COURT: Thank you.

■ The comments of the trial judge, while unfortunate and incorrect as a matter of law, were not upon matters relevant to the action. The prohibition of article 4, section 16 of the Washington State Constitution forbids comment by judges upon matters of fact. However, the comments on dividing fees were comments upon a fact which was not in issue and not in dispute. The constitutional prohibition does not apply to such comments. *James v. Ellis*, 44 Wn.2d 599, 269 P.2d 573 (1954). As stated in *State v. Louie*, 68 Wn.2d

304, 314, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042, 18 L. Ed. 2d 610, 87 S. Ct. 1501 (1967), "adverting to or assumption of an admitted or undisputed peripheral fact does not constitute constitutionally inhibited comment." In addition, the comments did not imply to the jury an expression of the judge's opinion concerning disputed evidence, or express the court's attitude towards the merits of the cause. *State v. Carothers,* 84 Wn.2d 256, 525 P.2d 731 (1974); *State v. Jacobsen,* 78 Wn.2d 491, 477 P.2d 1 (1970); *Risley v. Moberg,* 69 Wn.2d 560, 419 P.2d 151 (1966).

 Further, inadvertent remarks of a trial judge which might otherwise be a constitutional violation may be corrected by appropriate instructions. When the trial court explained his prior remarks to the jury and stated that they were not to be taken as comments on the evidence, no objection was made to this explanation and the court in the written instructions instructed the jury to disregard comments made by him during the trial.

In view of their incidental nature and because of the explanation and corrective instructions given, the court's comments were not prejudicial to the plaintiffs. *Blackburn v. Groce,* 46 Wn.2d 529, 283 P.2d 115 (1955); *Jankelson v. Cisel,* 3 Wn. App. 139, 473 P.2d 202 (1970).

4. *What is the duty of the client to inform the attorney about the case? Is the client contributorially negligent if he fails to do so?*

The plaintiffs claim that the instructions imply that the clients must provide information to their attorney or be held to be contributorially negligent if they do not do so. The defendant-lawyers assert that it is the burden of the plaintiff-clients to show that but for the negligence of the lawyers, they as clients would have prevailed.

We do not find in the challenged instructions implications such as those read into them by the plaintiffs. However, even if such implications are raised, the instructions were not erroneous as given. The instructions challenged in the fourth, fifth and sixth assignments of error set forth the

claims of the parties, the burden of proof upon each party, and the definitions of terms. Instruction No. 2 (assignment No. 4) was in the form of WPI 20.01; instruction No. 3 (assignment No. 5) was in the form of WPI 21.03; and instruction No. 4 (assignment No. 6) encompassed WPI 21.01, 10.01, 10.02, 11.01, and 15.01.

██ Contributory negligence on the part of a client is a question of fact and, if established, would bar a malpractice recovery.[1] *Ishmael v. Millington*, 241 Cal. App. 2d 520, 50 Cal. Rptr. 592 (1966); W. Prosser, *Torts* § 65 (4th ed. 1971); 7 C.J.S. *Attorney and Client* § 156 (1937). It is a question to be decided by the jury, if a jury is the trier of the facts. Under the instructions, the jury was told that the lawyers claimed the clients were contributorially negligent in failing to supply necessary information, that the burden of proof was on the lawyers to prove failure to supply the information, and that negligence was a failure to exercise ordinary care by failing to do something which a reasonably careful person would have done under similar circumstances. Contributory negligence was further defined for the jury as set forth in WPI 10.01, 10.02, and 11.01.

Under certain circumstances it may be the duty of the lawyer to investigate the facts applicable to a transaction and report the results to the client. *Burien Motors, Inc. v. Balch*, 9 Wn. App. 573, 513 P.2d 582 (1973). If the attorney should have inquired concerning the facts and did not, the client cannot be said to have been negligent in failing to disclose said facts. *Bank of Anacortes v. Cook*, 10 Wn. App. 391, 517 P.2d 633 (1974). However, an attorney need not inquire into matters that do not pertain to the discharge of the duties that he has undertaken. *In re Estate of Novolich*, 7 Wn. App. 495, 500 P.2d 1297 (1972). Likewise, an attorney need not make inquiry where the responsibility for the matter is assumed by the client. *Fisk v. Newsum*, 9 Wn.

[1]This cause was tried in June 1972. Contributory negligence as a defense was eliminated by RCW 4.22.010 and .020, which were effective April 1, 1974. The impact of comparative negligence upon malpractice actions is not before us.

App. 650, 513 P.2d 1035 (1973); *Rochester v. Katalan*, 320 A.2d 704 (Del. 1974). Other jurisdictions have held that a client may be contributorially negligent by failure to exercise reasonable care in providing information to the attorney. *Ishmael v. Millington, supra; Theobald v. Byers*, 193 Cal. App. 2d 147, 13 Cal. Rptr. 864, 87 A.L.R.2d 986 (1961); *Salisbury v. Gourgas*, 51 Mass. (10 Met.) 442 (1845); *Zeitlin v. Morrison*, 167 App. Div. 220, 152 N.Y.S. 1000 (1915); *Rapuzzi v. Stetson*, 160 App. Div. 150, 145 N.Y.S. 455 (1914); Annot., 45 A.L.R.2d 5, 17 (1956).

The evidence in a case may be so clear that there can be no question but that the attorney should have inquired about a matter. *Hecomovich v. Nielsen*, 10 Wn. App. 563, 572, 518 P.2d 1081 (1974). However, if it cannot be said that the duty to inquire or disclose was present as a matter of law, then it is for the trier of the fact to decide, with the guidance of appropriate instructions, whether negligence existed on the part of a lawyer for his failure to inquire about certain matters or whether a client was contributorially negligent for failing to disclose a known fact to the lawyer. *Laux v. Woodworth*, 195 Wash. 550, 81 P.2d 531 (1938); *In re Estate of Novolich, supra*. Under the evidence introduced in this action, the instructions given on negligence and contributory negligence were appropriate.

5. *Where does the burden of proof lie in a client's malpractice action against an attorney?*

The trial court instructed the jury that the plaintiffs had the burden of proving (a) that they had hired the defendants to represent them, (b) that the defendants acted negligently, (c) that the plaintiffs would have recovered judgment upon their claim, (d) that the plaintiffs were damaged, and (e) that the negligence of the defendants was a proximate cause of the damage to the plaintiffs. The same instruction also told the jury that the defendants had the burden of proving (a) that the plaintiffs acted negligently, and (b) that the negligence of the plaintiffs was a proximate cause of the plaintiffs' injuries. *See* WPI 21.03; 7 C.J.S. *Attorney and Client* § 157, at 999 (1937).

■ The elements of a legal malpractice action are the existence of an attorney-client relationship, the existence of a duty on the part of a lawyer, failure to perform the duty, and the negligence of the lawyer must have been a proximate cause of damage to the client.[2] *Transcontinental Ins. Co. v. Faler*, 9 Wn. App. 610, 513 P.2d 864 (1973); *In re Estate of Novolich, supra; Ishmael v. Millington, supra; McGregor v. Wright*, 117 Cal. App. 186, 3 P.2d 624 (1931).

■ The burden of proving that an attorney has been negligent or failed to act with proper skill and that damages resulted therefrom is on the plaintiff client. *McLellan v. Fuller*, 226 Mass. 374, 115 N.E. 481 (1917). Likewise, the burden is on the plaintiff to show that the negligence of the attorney was a proximate cause of the client's damage. *Maryland Cas. Co. v. Price*, 231 F. 397 (4th Cir. 1916); *Laux v. Woodworth*, 195 Wash. 550, 81 P.2d 531 (1938); *Martin v. Nichols*, 110 Wash. 451, 188 P. 519 (1920); *Meagher v. Kavli*, 256 Minn. 54, 97 N.W.2d 370 (1959); *General Accident Fire & Life Assur. Corp. v. Cosgrove*, 257 Wis. 25, 42 N.W.2d 155 (1950). The burden is on the attorney to prove that the client was contributorially negligent in failing to act or in failing to disclose information to the lawyer. *See Martin v. Hall*, 20 Cal. App. 3d 414, 97 Cal. Rptr. 730, 53 A.L.R.3d 719 (1971); *Lawson v. Sigfrid*, 83 Colo. 116, 262 P. 1018 (1927). The instructions properly placed the burden of proving the attorneys' negligence upon the clients and the burden of showing the clients' contributory negligence upon the lawyers. The assignment of error fails.

6. *Was the jury erroneously instructed on the definitions of preponderance of the evidence, proximate cause, negligence, ordinary care, and contributory negligence?*

■ The instructions objected to were taken directly from Washington Pattern Instructions—Civil. We find neither argument directly related to the assignment of error, nor citations of authority concerning the challenges raised.

[2] The plaintiff need not be the client, only an injured party. *Schirmer v. Nethercutt*, 157 Wash. 172, 288 P. 265 (1930).

Therefore, the assignment of error will not be considered on appeal. *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 523 P.2d 193 (1974); *Talps v. Arreola*, 83 Wn.2d 655, 521 P.2d 206 (1974); *Spino v. Department of Labor & Indus.*, 1 Wn. App. 730, 463 P.2d 256 (1969).

7. *Was the jury erroneously instructed on the doctrine of unavoidable accident?*

■ It is apparent that the trial court and counsel discussed the instructions in chambers, but none of the colloquy concerning the proposed instructions is reflected in the statement of facts. The exception to the instructions does not set forth grounds for objection. This does not comply with CR 51(f), and while counsel may have been aware of a basis for the objection which was made known to the court, we cannot assume this was done. The point in question has not been preserved in the record for review. *Galvan v. Prosser Packers, Inc.*, 83 Wn.2d 690, 521 P.2d 929 (1974); *Holt v. Nelson*, 11 Wn. App. 230, 234, 523 P.2d 211 (1974).

8. *Should an instruction have been given telling the jury that they should award to the plaintiff parents damages for injury to the minor child?*

■ The trial court, in an instruction other than that proposed by the plaintiffs, properly informed the jury setting forth RCW 4.24.010.[3] The subject matter of the proposed instruction was correctly covered by the trial court, the plaintiffs could argue their theory of the case, and they have not been prejudiced. Further, the verdict of the jury in favor of the defendants establishes that they were not negligent, assuming the trial was error free otherwise.

[3] RCW 4.24.010 states in part:

"The mother or father or both may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either, or both, are dependent for support: . . .

". . .

"In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just."

Therefore, the question of damages becomes irrelevant. In *Adamson v. Traylor*, 66 Wn.2d 338, 402 P.2d 499 (1965), it was said that when the verdict is in favor of a defendant, even though an instruction on damages was erroneous, the error was harmless since the verdict has established that the defendants were not liable. *See also Bissell v. Seattle Vancouver Motor Freight, Ltd.*, 25 Wn.2d 68, 168 P.2d 390 (1946); *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 496 P.2d 527 (1972).

9. *Did the instruction on the standard of care required of lawyers properly set forth that standard?*

 The standard of care for lawyers practicing law in Washington is a statewide standard set forth in *Cook, Flanagan & Berst v. Clausing*, 73 Wn.2d 393, 395, 438 P.2d 865 (1968), as follows:

> The Restatement (Second) of Torts, § 299A (1965), states the standard as follows:
>> Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.
>
> Prosser explains that:
>> Professional men in general, and those who undertake any work calling for special skill, are required not only to exercise reasonable care in what they do, but also to possess a *standard minimum of special knowledge and ability*. (Italics ours.) W. Prosser, Torts § 32, p. 164 (3d ed. 1964).
>
> The standards of practice for lawyers in this jurisdiction as a qualification for the practice of law are the same throughout the state, and do not differ in its various communities. We therefore hold that the correct standard to which the plaintiff is held in the performance of his professional services is that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.

The court, in *Ward v. Arnold*, 52 Wn.2d 581, 328 P.2d 164 (1958), had said at page 584:

An attorney at law, when he enters into the employ of another person as such, undertakes that he possesses a reasonable amount of skill and knowledge as an attorney, and that he will exercise a reasonable amount of skill in the course of his employment, but he is not a guarantor of results and is not liable for the loss of a case unless such loss occurred by reason of his failure to possess a reasonable amount of skill or knowledge, or by reason of his negligence or failure to exercise a reasonable amount of skill and knowledge as an attorney. *Isham v. Parker*, 3 Wash. 755, 29 Pac. 835.

*Cook, Flanagan & Berst v. Clausing, supra*, recognized that the statement in the *Ward* case was consistent with the standard of section 299A of the Restatement.

The exception to the given instruction claimed that it did not contain all the elements of the duty that an attorney has to his client. The plaintiffs state in their brief that the instruction was correct as far as it went, but was insufficient in describing the fiduciary duty of an attorney. The instruction, however, with the exception footnoted, did inform the jury of the standard of proficiency required of lawyers.[4] The instruction told the jury that an attorney

---

[4] The instruction was adapted from WPI 105.01. It stated that an attorney must "exercise that degree of care which is ordinarily possessed and exercised by the *average* attorney acting in the same or similar circumstances." The insertion of the term "average" was error. However, no exception was taken to use of the descriptive word, and no mention of it appears except in the defendants' brief. The instruction in that regard became the law of the case.

*e. Standard normally required.* In the absence of any such special representation, the standard of skill and knowledge required of the actor who practices a profession or trade is that which is commonly possessed by members of that profession or trade in good standing. It is not that of the most highly skilled, nor is it that of the average member of the profession or trade, since those who have less than median or average skill may still be competent and qualified. Half of the physicians of America do not automatically become negligent in practicing medicine at all, merely because their skill is less than the professional average. On the other hand, the standard is not that of the charlatan, the quack, the unqualified or incompetent individual who has succeeded in entering the profession or trade. It is that common to those who are recognized in the profession or trade itself as qualified, and competent to engage in it.

owes to his clients a duty to comply with the recognized standard of practice for his profession prevailing at the time, that he must possess and apply that degree of skill and learning and exercise that degree of care which is ordinarily possessed and exercised by lawyers acting in the same or similar circumstances, and that failure to apply such skill and learning or to exercise such care is negligence. This was proper.

10, 11, and 12. *Was the fiduciary obligation of an attorney to his client understated in the instruction on standard of care? Was it error to refuse the proposed instructions on the duty of an attorney (a) to a client, (b) regarding the filing of claims, and (c) to inform a client on the progress of litigation?*

The issues raised by assignments of error Nos. 10, 11 and 12 all pertain to the standard of care expected of an attorney and his duty under certain circumstances. These assignments will be discussed together.

The standard of care required of attorneys does not impose special or different attention to duty because the relationship between attorney and client is a fiduciary one. The care exercised must still be reasonable. *Burien Motors, Inc. v. Balch*, 9 Wn. App. 573, 513 P.2d 582 (1973). The skill with which a legal task is performed must be the skill, prudence and diligence that would be exercised by lawyers of ordinary skill and capacity. *Smith v. Lewis*, 13 Cal. 3d 349, 530 P.2d 589, 118 Cal. Rptr. 621 (1975); *Lucas v. Hamm*, 56 Cal. 2d 583, 364 P.2d 685, 15 Cal. Rptr. 821 (1961). Existing within the standard, and comprising a component thereof, is the fiduciary duty of the lawyer to the client. That duty does not create a special standard, but sets the standard of performance on a level where conscientious endeavor is expected of ordinary men. The exercise of trust responsibility by the attorney is a part of his work which makes diligence and constancy in the handling of a

Restatement (Second) of Torts § 299A, comment *e* at 74-75 (1965). *See also Butler v. Rule*, 29 Ariz. 405, 242 P. 436 (1926); *Buckner v. Wheeldon*, 225 N.C. 62, 33 S.E.2d 480 (1945).

client's concerns an element to be reasonably expected of ordinary lawyers as a matter of course. The standard of care was defined properly for the jury and the plaintiffs were able to present their theory of the case under the instructions given. *Hayden v. Insurance Co. of North America*, 5 Wn. App. 710, 490 P.2d 454 (1971).

■■■■ The instruction proposed by the plaintiffs on the filing of claims was inappropriate. The instruction would have told the jury that it was the duty of the defendants to examine the claim filed by the Seattle lawyer against the City of Spokane, and if they "deemed" the claim defective to amend it or file a new claim within the applicable statutory period to correct the defect. There was neither evidence in the case that the defendant-lawyers "deemed" the claim already filed defective, nor evidence that they would have found it defective after any amount of further examination. The position of the defendant-lawyers throughout the trial was that they were retained to represent only the interests of the child and that, in any event, the time period for filing a claim against the City had expired when they were first retained. The proposed instruction stated that the lawyers had a duty to amend or file a new claim if it was their opinion that they should do so. The evidence as to the opinion of the defendant-lawyers in this regard was that they should *not* do so. A misstatement was made in the proposed instruction. Instructions should not be given on issues which are unsupported by the evidence. *Bartlett v. Hantover*, 84 Wn.2d 426, 526 P.2d 1217 (1974); *Chapman v. Claxton*, 6 Wn. App. 852, 497 P.2d 192 (1972).

■■■■ The trial court instructed the jury properly that the degree of care, skill and learning which constitutes the recognized standard of practice of a profession must be proved by testimony of a member of that profession. Establishment of the standard of care by expert testimony is unnecessary, however, where the area of claimed malpractice is within the common knowledge of laymen. *Teig v. St. John's Hosp.*, 63 Wn.2d 369, 387 P.2d 527 (1963); *Baker v. Beal*, 225 N.W.2d 106 (Iowa 1975); *Admissibility and Ne-*

*cessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney*, Annot., 17 A.L.R.3d 1442 (1968). From the evidence presented on the duties of lawyers to their clients, including the testimony on the duty of attorneys to keep their clients informed, from the knowledge which the laymen jurors would bring to the trial and which could be applied by them in their deliberations, and under the instruction given on the standard of care to be met by the defendants, the instructions presented by the plaintiffs were unnecessary. The theories of the clients could be argued. *Hester v. Watson*, 74 Wn.2d 924, 448 P.2d 320 (1968); *Harris v. Fiore*, 70 Wn.2d 357, 423 P.2d 63 (1967). We find no error in the failure of the trial court to give the plaintiffs' proposed instructions which elaborated and expounded on the standard of care of the lawyer.

13. *What is the appropriate rule regarding the division of fees between lawyers?*

■ The Code of Professional Responsibility is comprised of (a) Canons, which express general concepts regarding the standards of conduct expected of lawyers; (b) Ethical Considerations (EC), which represent behavioral aims which lawyers should seek to achieve; and (c) Disciplinary Rules (DR), which set forth levels of deportment which must be met. These rules have the dignity and status of any rule adopted by the Supreme Court. *In re Chantry*, 67 Wn.2d 190, 407 P.2d 160 (1965). They are the standards of ethics for all members of the bar of this state. RCW 2.48.230.

Regarding the division of fees among lawyers (CPR) DR 2-107(A)[5] states:

> (A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

---

[5] (CPR) DR 2-107(A) was adopted effective January 1, 1972. However, its predecessor, Canon 34 adopted November 22, 1950, also condemned dividing fees, except with another lawyer, and then only when the division was based upon a division of service or responsibility.

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

This rule stands as a mandatory standard of conduct which imposes upon a lawyer (a) the necessity of disclosing to a client that it is proposed that another lawyer will be employed and that the fee will be divided with him, and (b) achieving the client's consent to the hiring before the other lawyer is employed. When such an arrangement is entered into, fees are then to be divided in proportion to the work performed and the responsibilities assumed, and the total fees charged must not clearly exceed the reasonable compensation for all legal services performed. *See also* (CPR) EC 2-32; H. Drinker, *Legal Ethics* 186-88 (1953).

(CPR) DR 2-107(A) is buttressed by (CPR) DR 2-103(B), which directs lawyers not to compensate or give anything of value to anyone to recommend or secure employment, or as a reward for having made a recommendation resulting in the employment of the lawyer.[6]

*State v. O'Connell*, 83 Wn.2d 797, 523 P.2d 872 (1974), stands for the proposition that a client may not compel the return of that portion of a fee that has been secretly shared with another lawyer when the division of fees was based on the performance of services and the sharing of responsibility and the total fees paid were reasonable. The decision does not lessen the force of the disciplinary rule condemning the division of fees other than pursuant to its terms.

The plaintiffs proposed an instruction which stated that it was the standard of skill, care and diligence among attorneys in the state to divide fees pursuant to (CPR) DR 2-107(A). The portion of the instruction submitted by the plaintiffs, which was taken directly from (CPR) DR 2-

---

[6]There are limited exceptions to this rule not pertinent to this inquiry. *See* (CPR) DR 2-103(C), (CPR) DR 2-107(B).

107(A), correctly stated the law, but when the proposed instruction went beyond the rule and said that the division of fees was related to the standard of skill, care and diligence that an attorney owes to a client, it became misleading and confused unrelated concepts. Further, the proposed instruction was not pertinent to the issues as no evidence was presented that fees had been divided between the lawyers involved. *Pancratz v. Turon*, 3 Wn. App. 182, 473 P.2d 409 (1970). It was properly refused.

14. *When can an attorney withdraw from employment and what is his duty upon doing so?*

When a lawyer contracts to perform professional services for a client, he is required to carry the matter through to completion unless there is good cause for withdrawal. (CPR) DR 7-101(A)(2); 7 Am. Jur. 2d *Attorneys at Law* §§ 143-45 (1963). A decision to withdraw should be made only because of compelling circumstances and with consideration of the possibility of prejudice to the client as a result of the withdrawal (CPR) EC 2-32.

An attorney may withdraw from a case when a client insists upon presenting an unwarranted claim or defense, pursues an illegal course of action or insists that the lawyer do so, makes it unreasonably difficult for the lawyer to work effectively, insists in a nontribunal matter that the lawyer engage in conduct that is contrary to his judgment and advice, or when the client disregards his obligations as to fees or expenses. A lawyer may also withdraw when his continued employment may result in the violation of a disciplinary rule, when he cannot work with co-counsel, when he cannot mentally or physically carry out the work, when the client agrees to the withdrawal, or when in a matter pending before a tribunal he believes that the tribunal will find other good cause for withdrawal. (CPR) DR 2-110(C).

An attorney must withdraw when he discovers that the client's position is being asserted merely for the purpose of harassing another, when he knows that continued employment will result in violation of a disciplinary rule, when his

mental or physical condition makes performance unreasonably difficult, or when he is discharged by the client. (CPR) DR 2-110(B). An attorney is also required to withdraw when it is obvious that he or a member of his firm should be called as a witness on behalf of the client, (CPR) DR 5-102; when his judgment is likely to be adversely affected by his representation of another client, (CPR) DR 5-105; or when it becomes apparent that he is not competent to handle the matter properly, (CPR) DR 6-101.

When a lawyer decides to withdraw for cause, a duty remains to protect the welfare of the client. The attorney must then give notice of withdrawal, suggest employment of other counsel, return papers and property to which the client is entitled, cooperate with succeeding counsel, refund compensation not earned and minimize the possibility of harm to the client. (CPR) DR 2-110(A) and (CPR) EC 2-32. *See also In re Fraser*, 83 Wn.2d 884, 523 P.2d 921 (1974); *In re Vandercook*, 78 Wn.2d 301, 474 P.2d 106 (1970). Statutory requisites under RCW 2.44.040 and 2.44.050 for the substitution of counsel that have appeared in court proceedings must also be met.[7] *Lipp v. Hendrick*, 65 Wn.2d 505, 397 P.2d 848 (1965). Leave of court is not required as between attorney and client, but only may be necessary when an adverse party is involved after an appearance has been filed. *Bostock v. Brown*, 198 Wash. 288, 88 P.2d 445 (1939); *State ex rel. Jones v. Superior Court*, 78 Wash. 372, 139 P. 42 (1914).

---

[7]RCW 2.44.040 reads:

"The attorney in an action or special proceeding, may be changed at any time before judgment or final determination as follows:

"(1) Upon his own consent, filed with the clerk or entered upon the minutes; or

"(2) Upon the order of the court, or a judge thereof, on the application of the client, or for other sufficient cause; but no such change can be made until the charges of such attorney have been paid by the party asking such change to be made."

RCW 2.44.050 reads:

"When an attorney is changed, as provided in RCW 2.44.040, written notice of the change, and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party; until then, he shall be bound to recognize the former attorney."

The instruction proposed by the plaintiffs covering the withdrawal of attorneys from the attorney-client relationship properly discussed certain aspects of the subject. However, the proposed instruction only highlighted a few of the factors involved and was not apropos under the record. We have noted that the retainer agreement forwarded to the attorney-defendants by the plaintiff-clients was for representation of the interests "of my said daughter." The plaintiffs moved for and were granted a voluntary nonsuit with regard to the cause of action of the daughter against the defendant-attorneys. There was no evidence of a relationship existing between the attorneys and the plaintiffs-parents from which the defendants could withdraw under the retainer agreement entered into and under the defendants' theory of the case. For the trial court to have instructed the jury that a contract of employment existed from which the defendants could only withdraw by taking certain prescribed steps would have inferred that an agreement did exist. This would have been an improper comment on the evidence and therefore was properly refused. *Weber v. Biddle*, 4 Wn. App. 519, 483 P.2d 155 (1971).

15. *Should the trial court have given the plaintiffs' proposed instruction which would have told the jury that the municipal claim filed on behalf of the minor child was in substantial compliance with RCW 35.31.010 and included the cause of action of the plaintiffs for their own injuries?*

The plaintiffs argue that the information provided in the claim that was filed was in substantial compliance with RCW 35.31.010 and gave the City of Spokane notice of the plaintiff-parents' claim. The plaintiffs argue that the defendant-lawyers were negligent in failing to recognize this and pursue the claim on behalf of the parents. The plaintiffs state it was the responsibility of the defendant-lawyers to take the position that the claim included the claim of the parents and assert that position against the City of Spokane, stating that such claim statutes are to be liberally

construed and citing to us *Cook v. Yakima*, 21 Wn.2d 810, 153 P.2d 279 (1944), and *Duschaine v. Everett*, 5 Wn.2d 181, 105 P.2d 18, 130 A.L.R. 134 (1940).

This argument is inconsistent with the other position urged by the parents that they have lost their cause of action against the City because the claim filed was not amended to include the claim of the parents. We will disregard any inconsistency to answer the issue presented.

■ The purpose of the claim statutes is to allow municipalities the opportunity to investigate (a) the claimant, (b) the claim close to the event producing it so that the true factual situation may. be discovered, and (c) to anticipate the possible monetary impact of the claim. It cannot be assumed that a new claimant not named within a claim prepared and filed by another would be pursued by attorneys retained after the expiration of the filing period. The addition of a new party to the claim cannot be justified by an assertion that the claim was broad enough to include the unnamed party. *Olson v. King County*, 71 Wn.2d 279, 428 P.2d 562, 24 A.L.R.3d 950 (1967); *Wagner v. Seattle*, 84 Wash. 275, 146 P. 621 (1915); *Horton v. Seattle*, 53 Wash. 316, 101 P. 1091 (1909). *See also Nelson v. Dunkin*, 69 Wn.2d 726, 419 P.2d 984 (1966).

Further, the proposed instruction would have told the jury that the defendant-attorneys had a responsibility to the plaintiff-clients even though the retainer agreement entered into did not so specify. This would have been an improper comment on the ultimate issue to be decided by the jury. *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964); *Weber v. Biddle*, 4 Wn. App. 519, 483 P.2d 155 (1971).

16. *Should the proposed instruction have been given stating that the claim of the parents was barred because it was not brought within 3 years?*

The plaintiffs claim they were precluded from arguing that they lost their right of action against the City because the defendants abandoned the action without informing them and allowed the statute of limitations to run. They

assert the jury should have been instructed that their claims as parents were barred by failure of the defendants to commence suit within 3 years of the injuries.

Here again the record does not contain any statement of the ground for objection made to the trial court. If the record does not show compliance with CR 51(f), an asserted error based upon an objection to the giving or refusal of any instruction cannot be considered on appeal. *Great-West Life Assur. Co. v. Levy*, 382 F.2d 357 (10th Cir. 1967); *Tunney v. Seattle Mental Health Rehabilitation Institute*, 83 Wn.2d 695, 521 P.2d 932 (1974); *Moore v. Mayfair Tavern, Inc.*, 75 Wn.2d 401, 451 P.2d 669 (1969).

17. *Was it error to instruct the jury that a statute (35.31.020) provided that claims for damages against a first-class city must be filed within 120 days from the date that an injury is sustained because such statute is unconstitutional?*

 The plaintiffs say it was error to instruct on the provisions of RCW 35.31.020, the municipal claims statute, because it is unconstitutional. The plaintiffs state that the statute unconstitutionally distinguishes between classes of defendants by requiring plaintiffs with causes of action against municipalities to file a claim within a short period, while plaintiffs with claims against private parties need not do so. They cite to us *Reich v. State Highway Dep't*, 386 Mich. 617, 194 N.W.2d 700 (1972). The constitutionality of RCW 35.31.020 is not before us, however. Lawyers are not required to look to the possibility of the unconstitutionality of statutes in exercising their professional judgment on behalf of the clients on the assumption that the statute was constitutional. The claim that RCW 35.31.020 is unconstitutional is contrary to prior rulings in this state. *Collins v. Spokane*, 64 Wash. 153, 116 P. 663 (1911); *Cole v. Seattle*, 64 Wash. 1, 116 P. 257 (1911). In addition, there is substantial precedent upholding such claim statutes. 56 Am. Jur. 2d *Municipal Corporations* § 680, at 725 (1971).

An attorney is not negligent when he accepts as a correct

interpretation of the law a decision of the highest court of his state, or when he exercises judgment in a matter of doubtful construction. *Martin v. Burns,* 102 Ariz. 341, 429 P.2d 660 (1967); *Lucas v. Hamm,* 56 Cal. 2d 583, 364 P.2d 685, 15 Cal. Rptr. 821 (1961); *Citizens' Loan, Fund & Sav. Ass'n v. Friedley,* 123 Ind. 143, 23 N.E. 1075 (1890); *Denzer v. Rouse,* 48 Wis. 2d 528, 180 N.W.2d 521 (1970).

We find no error which can be claimed to have prejudiced the plaintiffs. The judgment is affirmed.

FARRIS and JAMES, JJ., concur.

Petition for rehearing denied November 19, 1975.